# Pittsburgh & Lake Erie Railroad Company *versus* Bruce.

| | |
|---|---|
| 102 | 23 |
| 169 | 279 |

| | |
|---|---|
| 102 | 23 |
| 24 SC 1 | 52 |
| 24 SC 1 | 53 |
| 102 | 23 |
| 212 | 131 |
| 102 · | 23 |
| 31 SC | 594 |

| | |
|---|---|
| 102 | 23 |
| 36 SC | 407 |

1. The charter of the Pennsylvania & Ohio Canal Company provided that it might enter upon, take possession of, and use all such lands as might be necessary for the construction of its works, certain commissioners being authorized to assess such damages as they thought any person would sustain by the opening of the canal through his land. The canal was further declared to be a public highway whereon any one might travel on payment of tolls. The stock was declared real estate, and the works were vested in fee in the stockholders as tenants in common: *Held,* that the company acquired under the terms of the charter a right of way only over the lands appropriated by them, and that they did not acquire said lands in fee.

2. The said canal company having become insolvent, and all its property and franchises being sold to a railroad company by order of court: *Held,* that said last-named company could not construct its tracks on the right of way acquired by the canal company without making compensation to the owner of the land.

3. The owner of the land was held entitled, where such track had been laid without making or tendering compensation, to recover in ejectment against the railroad company.

[Pittsburgh, &c. R. R. Co. *v.* Bruce.]

4. Where a ·judgment is obtained by the owner of the fee in such action of ejectment, the railroad company may secure a right of way and save its improvements by having damages assessed as provided by law, and the court may by injunction restrain execution on the judgment until this can be accomplished.

December 7th 1882. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

ERROR to the Court of Common Pleas of *Lawrence county:* Of October and November Term 1881, No. 219.

Ejectment, by Christopher C. Bruce, John Bruce, Jane Bruce and Nancy Bruce, against the Pittsburgh & Lake Erie Railroad Company, for a strip of land 60 feet in width, and 2,878 feet in length, on which the defendants had constructed their railroad.

The plaintiffs showed title to a farm of which the strip in controversy was originally a part. This strip had been originally taken adversely and used by the Pennsylvania & Ohio Canal Company, under their charter, for their canal, and on the abandonment thereof the defendant company acquired the right and title of said canal company therein, and constructed the railroad thereon. The principal question in the case was whether the canal company acquired a title in fee simple to the strip which passed to the defendants, or whether said canal company acquired only an easement or right of way for the canal, which, on the abandonment of the canal, ceased and determined, whereby the plaintiffs held the strip in dispute, as of their original estate therein.

By agreement the case was tried without a jury, under the provisions of the Act of April 22d 1874, before BREDIN, J., whose findings of fact and conclusions of law were as follows :—

The ground in dispute is a small strip through the farm of plaintiffs, being the same ground formerly occupied by the Pennsylvania & Ohio Canal, for the bed, banks and tow-path ·of said canal, and now by the ties and track of defendants' railroad. That plaintiffs had title thereto is admitted, but defendants claim that as vendees of the rights and franchises of said canal company, they are entitled to the possession, use and occupancy of said ground for the purpose of their railroad.

The ·Pennsylvania & Ohio Canal Company was incorporated by the legislature of Pennsylvania by certain Acts offered in evidence, the only one which it is necessary to cite being No. 162 of the session of 1826–7. The land now in dispute was taken and appropriated by said canal company under the 9th section of said Act, P. L. 375, and damages assessed to Thomas Bruce, then owner of the land.

The first position taken by defendant is, that the canal company by said proceeding acquired the fee in the land so

taken, and therefore plaintiffs cannot recover. The authority given to the canal company is under section third of said Act, which is as follows: "That for the purpose of assuring to the said corporation all the lands, real estate, waters and materials, requisite for most economically constructing and maintaining said canal and the works connected therewith, and incident and necessary to the navigation of the same, whenever the said lands, waters and materials shall not be attained by voluntary donation or fair purchase, it shall be lawful for said corporation, by any of their officers and by each and every agent, superintendent or engineer by them employed, to *enter upon, take possession of and use* all such lands, real estate and streams as shall be necessary for the purpose, aforesaid; and also enter upon and take all necessary materials for the construction of said canal and other works connected therewith, adjoining or near said canal or other works, on whose land soever the same may be, doing thereby no unnecessary damage, they satisfying and paying all damages which may be occasioned thereby to any person, etc., in the manner hereinafter provided."

Section 5th authorizes the company to purchase and hold to them and their successors forever, real and personal estate necessary for constructing, maintaining and repairing said canal and works, and receive, hold and take voluntary grants and donations of land and real estate, . . and wherever, in either of the ways aforesaid, said corporation shall become possessed of and own any lands or real estate which it may be unnecessary for them to retain for the purposes aforesaid, it shall be lawful for them to lease, occupy, alien and convey the same by lease or deed; provided that all lands and waters necessary for said purposes shall be held and applied to said purposes.

Section 9th provides, that whenever any lands, waters, streams or materials shall be taken and appropriated, and the same shall not be given or granted to said corporation, and the proprietors do not agree with the corporation as to the amount of damages or compensation which ought to be allowed and paid therefor, and do not agree on persons to appraise the same, the damages shall be estimated and assessed by three commissioners appointed by the legislature, who shall meet and pass over the premises so used or appropriated, and after hearing the parties, shall estimate all such damages as they shall think any person will sustain (or have sustained) by the opening of said canal through his or her lands, or by the construction of embankments, reservoirs, etc., or for any materials used in the construction thereof, or from the diversion of water, over and above the benefits and advantages which the said commissioners shall adjudge may accrue to said persons from opening said

canal. The report of commissioners was to be filed and might be made a rule of court, as in the case of awards, and when affirmed and recorded to "forever be a bar to any action commenced or to be commenced for damages against said corporation, on account of the injury for which such damages were awarded."

The 19th section is as follows: "That for and in consideration of the expenses the said corporation will be at in constructing said canal and other works connected therewith as aforesaid, and in improving and keeping the same in repair, the said canal and all other works aforesaid, together with all tolls, rents and profits arising therefrom, shall be and the same are hereby vested in the said stockholders, their heirs and assigns forever, as tenants in common, in proportion to their respective shares, and the same shall be forever exempt and free from the payments of any tax, imposition or assessment whatever. Provided, that the state shall have the power at any time after the expiration of fifty years from the time of the completion of said canal, to purchase and hold all that part thereof lying within the limits of this state for the use of said state, by paying to the corporation therefor the amount expended by them in locating and constructing the same, together with fifteen per centum thereon."

By the 10th section, the canal when completed is declared a public highway.

Section 17th declares: That the stock of said corporation shall be deemed and considered real estate, and any shares may be transferred by deed duly acknowledged and recorded by the clerk of said corporation in a book to be kept for that purpose.

Section 18th provides: That when the land or property of an infant, femme covert or lunatic shall be taken and appropriated for the use and purpose of said canal, the guardian, husband, etc., may enter into contracts, execute deeds, etc., as they might do if the land were by them holden in their own right respectively.

The rights given the company "to enter upon, take possession of and use" lands necessary for the purposes of the canal are no higher than the right "to enter upon and into, and occupy" lands given by the general railroad law of 1849, under which a corporation only takes an easement in the land: West Pennsylvania Railroad Co. *v.* Johnson, 59 P. S. R. page 290. The damages are to be estimated and assessed not for the value of the land taken, and other injuries done, but for damages which the owner has sustained or will sustain by the opening of said canal through his lands, over and above the advantages which may accrue to him from said opening. The report of commissioners, when affirmed, and the damages assessed, does not have the effect as in the acts incorporating a number of

companies referred to by defendants, of vesting in the corporation the same estate which the owner theretofore had in the land, but is made a bar to any action on account of the injury for which such damages were awarded.

Again, the corporation is given power to sell, lease and occupy lands and real estate which they have acquired by purchase or voluntary grant, which they may find it unnecessary to retain for the purposes of their incorporation, while no power is given them to dispose of any lands taken in adverse manner; and lands and waters necessary for the purposes of the canal must be held and applied thereto.

Unless, therefore, the 17th and 19th sections control and change the construction that would otherwise be given to the 3d, 5th and 9th sections, it seems to us very plain that the canal company only took an easement in the land of Thomas Bruce. The Act, it is to be borne in mind, is the re-enactment of a statute passed by the legislature of the state of Ohio. The phraseology is not that of one familiar with the laws of Pennsylvania. Was it ever dreamed that a judgment against a share-holder of the Pennsylvania and Ohio Canal Company became a lien on his shares in said company and on said canal and its works? Yet, if the interest was real estate, and the canal and works were held by the stockholders, their heirs and assigns, as tenants in common, how could such a result be avoided under our laws?

The Act must be construed as a whole, and such a reasonable construction must be given to it, as will carry out, not defeat, the purpose of the charter. The 17th section provides how shares may be transferred. It probably did cause the descent of said shares to the heirs of a shareholder instead of to his executors or administrators, but it gave the shareholder no greater rights in land taken, than the company had or might take and pay for. The 19th section is drawn with the evident design of making a contract between the stockholders and state within the protection of the constitution of the United States. So far as the object of each of said sections is concerned and in reference thereto, the language used therein is entitled to its full weight; but not so upon subjects merely collateral and incidental thereto.

As against the commonwealth, these sections might be construed strongly in favor of the corporation. As against the owner of land whose property is taken and appropriated under the right of eminent domain, we think no presumptions are in favor of, but all are against the corporation. Unless the words of the statute will admit of no other reasonable construction, the courts will never hold that a corporation takes any greater estate in land appropriated under the right of eminent

domain, than is necessary for the purposes of the corporation. The right to take said property can only be upheld as being for a public use. When the use ceases the land ought to revert. Here no provision was made by law for valuing the land itself, only damages assessed for injury done thereto by the opening of the canal through the same.

We hold that the Pennsylvania & Ohio Canal Company only had a right of way over the land in dispute for the use of its canal, and that on the abandonment of the canal, the land would revert to the owners of the fee, unless intercepted and diverted by legislative power.

Defendants claim, however, that they, as successors of the canal company, have the right to change the use of the right of way from that of a canal to a railroad, without first paying or securing compensation for damages done to the landowner by such change of use. This canal was declared a public highway, and it is said in Commonwealth *v.* E. & N. E. Railroad Company, 3 Casey 354, that " the right of the legislature to authorize the building of a railroad on a street or other public highway, is not now to be doubted." Whether since the constitution of 1874, section 8, of article 16, the legislature may authorize such building without compensation to property owners whose property may be injured thereby, has not yet been settled by our Supreme Court, though Judge Hare, P. J. of C. P. No. 2, Philadelphia, in Duncan *v.* Pennsylvania Railroad Company, 7 W. N. C. 556, holds that consequential damages are now provided for, and that security should be given before the injury is done.

Let it be conceded, however, for the present, that defendants are vested with all the rights and franchises of the Pennsylvania & Ohio Canal Company, and that the legislature might constitutionally authorize the taking of property already devoted to one public use, for another public use, without providing for compensation to the owners of land injured by such change of use. What legislative authority do defendants show us for such taking or change of use? The organization of the defendant company is under the general railroad law. They claim no special privileges. Their case is certainly no stronger than that of the defendants in Mifflin *v.* Railroad Co., 4 Harris 191, where the railroad company was authorized to purchase a turnpike road from the company owing it, for the purpose of laying rail thereon, under certain supplements, which supplements said nothing about damages. But the Supreme Court held they took under their original charter, which contained the usual provisions for assessment of damages (sections 79 and 80, pages 595 and 596, P. L. session 1831–2); and that plaintiff was entitled to have his damages assessed against the railroad

[Pittsburgh, &c. R. R. Co. *v.* Bruce.]

company for the change of use, though he had receipted in full to the turnpike company for damages sustained by the location and construction of the turnpike road, and though the railroad occupied no other ground than that formerly used by the turnpike. That in some cases the change of use from a canal to a railroad would be a very serious injury to the owners of property adapted for certain purposes, and used in connection with the privileges secured to all citizens on the canal, is very evident. The abandonment of the canal would, we have heretofore held in such a case, be damnum absque injuria (and see Pennsylvania & New York Canal and Railroad Company *v.* Bunnell, 2d Weekly Notes 633); but it certainly, in many cases, would be no answer to a just claim for damages by the construction of a railroad, to say that the damages were settled for, when the canal, whose place the railroad took, was constructed. This would but add insult to injury.

As said by Judge KENNEDY, in Ridge Turnpike Co. *v.* Stoever, 6 Watts & Ser. 379 : "I take it to be well settled, that whenever the law has given a person or company a right to enter upon the land of another for a special purpose, and such person or company enters for a different purpose not authorized by law, he or they will be regarded as trespassers, and may be sued as such by the owners of the land."

We hold, therefore, and find that the defendants have shown no authority from the legislature of Pennsylvania for their entry upon the land of plaintiffs, and the building of a railroad on the ground formerly occupied by the Pennsylvania & Ohio Canal Company for the purposes of a canal, and do hold and find that said entry was unauthorized and unlawful, and do hold and find that the canal company and its assigns, having abandoned the canal, the plaintiffs are entitled to recover the possession of the land in dispute. We do therefore enter judgment in favor of the plaintiffs for the land described in the writ, with six cents damages and six cents costs.

The defendants filed, inter alia, the following exceptions to the above findings and opinion of the court :

Third. The court erred in its conclusion of law, that the said Pennsylvania & Ohio Canal Company only had a right of way over the land in suit, for the use of its canal.

Fourth. The court erred in not concluding that said canal company, under the exercise of its corporate rights, took a fee in the land in suit, and that fee vested in the said Pittsburgh & Lake Erie Railroad Company by virtue of the above recited Acts, proceedings and conveyances.

Fifth. The court erred in not concluding, that even if said canal company only took an easement in the land in suit, that by virtue of the Acts of Assembly, proceedings and conveyances,

above recited, said easement was continued to said Pittsburgh & Lake Erie Railroad Company, and that it was lawfully seised, and by reason thereof, it might construct and use its railroad upon the land in suit.

Sixth. The court erred in concluding that there was an abandonment in law of the canal by said company, or of any part thereof.

The court, in an opinion by BREDIN J., overruled the above exceptions and entered judgment for the plaintiffs for the land in dispute; whereupon, the defendants took this writ of error, assigning for error inter alia, the overruling of their said exceptions and the entry of judgment for the plaintiffs.

*J. H. McCreery* (with him *D. B. & E. T. Kurtz*), for the plaintiffs in error.—We contend that the right of plaintiffs was divested by an appropriation of the land by the canal company, under the provisions of the Act of the state of Ohio, passed January 10th 1827, and adopted, ratified, confirmed and enacted into a law of this state by the Act of Assembly of April 14th 1827 (P. L. 1826-7, page 369).

That the state in the exercise of her right of eminent domain had the power to give the fee cannot be doubted, and the question here is simply, what estate, interest or right in the land did the state authorize this canal company to take? To ascertain this, we should have regard to the time of the enactment, and consider the circumstances then existing, the views and opinions then entertained in relation to its object, and contemporaneous legislation upon the same subject. This Act was passed when the state was making her system of internal improvements, and when many companies were being incorporated to build canals and railroads, which were intended as auxiliaries to that system. These were all intended and believed to be public highways, and were contemplated as permanent works, that were to endure forever; and it is submitted that, from a careful review of the act of incorporation and the supplements thereto, the legislature intended that the company should take a fee in the land used for a canal.

Another consideration requiring a liberal construction of the Act, is the fact that it was the joint act of two states, and is therefore not only a contract with the company, but a compact between the states: Railroad Co. v. Speer, 6 Smith 325. The defendant company had the power to take and hold the canal property by merger or by purchase: Act of April 14th 1870, Pamph. Laws, 1870, page 75; Hatch v. Railroad Co., 18 Ohio State Reports 92. And by the conveyance to them they acquired the right to a perpetual and exclusive public use of the real estate of the canal company: 4 Ohio St. 308-329; 18 Id. 121.

[Pittsburgh, &c. R. R. Co. *v.* Bruce.]

Provision is made in one of the supplements to the act of incorporation whereby the state might purchase said canal property, and it has been decided that the Commonwealth takes a fee in all its public improvements : Craig *v.* Mayor of Allegheny, 3 P. F. S. 477. If it be true that the canal company only took an easement, how, then, is the title to be changed to a fee when the Commonwealth is subrogated to the rights of the canal company and becomes the owner of the property? No provisions appear anywhere for the change from an easement to a fee.

Admitting that only an easement was taken by the canal company, we apprehend it can make no difference for the purpose of this case. The plaintiffs, with full knowledge of what was being done, permitted the canal bed to be filled up, and the railroad constructed under a claim of title and a right to build a railroad, without any attempt to enjoin the possession and change of use. They have therefore waived all questions save an assessment of damages under the Act of 1849 : Railroad Co. *v.* Johnston, 9 Smith 290 ; Goodin *v.* Canal Co., 18 Ohio St. 169.

No proceedings for an abandonment were ever begun. Abandonment is a legal question to be determined only by a legal proceeding for a forfeiture of corporate rights against the corporation. Only the state could exact a forfeiture, or declare the charter void, and until it does so the charter is still subsisting : Turnpike Co. *v.* McConaby, 16 S. & R. 145 ; Bridge Co. *v.* Lehigh Coal Co., 4 Rawle 9 ; Dyer *v.* Walker, 4 Wright 157.

When land has once been taken for a public use and paid for, a change of use does not determine the estate, and the owner of the land is not entitled to any further compensation for the new use, because the payment was for a perpetual easement : Chase *v.* Sutton Mf'g. Co., 4 Cushing 152 ; Noll *v.* Railroad Co., 32 Iowa 66. The state itself has changed the use sometimes : Commonwealth *v.* Railroad Co., 3 Casey 339 ; Phila. & Trenton Railroad Co.'s Appeal, 6 Wharton 25. To entitle an owner to damages for a change of use of a public highway across his land he must ground his claim on an Act of Assembly : Snyder *v.* Railroad Co., 5 Smith 341 ; Railroad Co. *v.* Speer, 6 Id. 325. Our exception to the findings of fact by the court below is not that facts are stated incorrectly, but that the court does not include in its finding, facts proven and undisputed, but essential to a proper understanding of the case.

*Dana* and *Long* (with them *McMichael* and *McConnell*), for defendants in error.—The claim that the defendant company has title in fee simple to this land, is based entirely on the position that the canal company acquired the fee, when it appropriated this land under the provisions of its charter for the purposes of a canal. It is not pretended that the plaintiffs

or their father who owned the land at the time it was appro-
priated, ever did anything to divest themselves of their title to
it. Did the canal company then acquire the fee by its act
of appropriation? If so, its authority to do so must be found
"in plain words, or by necessary implication," in the Act of
incorporation : Commonwealth *v.* Railroad Co., 3 Casey 351 ;
Lance's Appeal, 5 Smith 16. There is no language in the Act
incorporating said company, expressly giving, or necessarily, or
even fairly implying any such right or power. Every provision
and every implication in the Act is fully complied with by
assuming that the company took only a right of way over these
lands. Because the use may continue forever it does not draw
to itself the fee. It may well be a perpetual use and the fee
remain in the owner, and when the use ceases, as it did in this
case, the title and the right of possession become absolute in
the owner : Jessup *v.* Loucks, 5 Smith 350. This is not the
case of a public improvement made by the Commonwealth,
but the ordinary case of a corporation invested with the right
of eminent domain for a particular purpose, and if the Com-
monwealth should resume the franchises and purchase the
property of the corporation it would take only such franchises
as it had granted, and such real estate as had been properly
acquired under them. The title which the defendant company
took by their purchase was nothing more, at furthest, than the
right to maintain and operate a canal over the land ; and that
right, we submit, could not be purchased and held by this
railroad company. It was incorporated May 18th 1874, for the
purpose of building and operating a railroad. The constitution
at that time, and yet in force, provides that " no corporation
shall engage in any business other than that expressly authorized
in its charter, nor shall it take or hold any real estate, except
such as may be necessary and proper for its legitimate busi-
ness." How, then, could this railroad company undertake to
operate a canal, or take and hold a title or interest in land
limited to the maintaining and operating a canal on it? In
point of fact, however, the canal has been obliterated, and there
is a railroad in its stead. For this change of use, no law or
authority is shown.

The facts presented by counsel for the defendant company
by way of estopping the Bruces are entirely outside of the
record. Besides, the company, before the commencement of
their road, were fully advised of the claim of Bruces to the
land, express notice being given them, and during the construc-
tion of the road the claims of Bruces were continually kept up.

That ejectment can be maintained by the owner for land
occupied as a highway, or over which there is an easement, if
the land be used for any other purpose than such as is warranted

by the easement, is settled by a large number of cases : Cooper
v. Smith, 9 S. & R. 31 ; Alden v. Murdock, 13 Mass. 256 ;
Wooster v. Butler, 13 Conn. 309 ; Gardiner v. Tisdale, 2 Wis.
153.

Mr. Justice GORDON delivered the opinion of the court,
January 2d 1883.

This case was well tried in the court below, and to the opin-
ion of the learned judge we can add but little beyond our ap-
proval.

Corporations take those powers which are conferred upon
them by the legislature and nothing more.   Again, the charter
of a corporation must be construed liberally as to the public, and
strictly as to the grantee.   Commonwealth v. the North East
Railroad Co., 3 Ca. 339.   The plaintiff in error, however, in-
verting this rule, would have us construe its charter in such a
manner as to give it not only such rights as are therein plainly
granted, but also such as may be raised by a forced construction
of that instrument.   This, we need scarcely say, cannot be done,
It would be such an exercise of judicial charity in favor of a
corporation, as has not yet found place in the courts of Penn-
sylvania.

This whole case is determinable by the solution of a single
proposition, which is this; if the Pennsylvania & Ohio Canal
Company took, under its charter, a fee in the land of Thomas
Bruce, then the judgment of the court below was wrong and
must be reversed; but if it took but an easement that judg-
ment was correct and must be affirmed.   But when we come to
examine the act of incorporation we find no trace of the power,
as claimed by the defendant, to take, by the exercise of the
right of eminent domain, an absolute estate in land.   "That
for the purpose of assuring to the corporation," reads the act,
" all the lands, real estate, waters and materials, requisite for
most economically constructing and maintaining said canal and
the works connected therewith, and incident and necessary to
the navigation of the same, whenever the said lands, waters and
materials shall not be attained by voluntary donation or fair
purchase, it shall be lawful for said corporation, by any of their
officers, and each and every agent, superintendent or engineer
by them employed, to enter upon, take possession of and use all
such lands, real estate and streams as may be necessary for the
purposes aforesaid."

Herein we find a power to *take and use* such lands,  waters
and materials as may be necessary to construct and maintain the
proposed works, but in this there is no grant of a right to  take
the fee in land thus occupied, on the contrary that right is con-
fined to use and occupation only, unless it be enlarged by the

6  OUTERBRIDGE— 3

deed or gift of the owner. There was, then, in this company but a possession and use, in other words, a right of way, and that for a single purpose, the construction and maintenance of a canal, and when the canal was abandoned the use and occupation of the land reverted to the owner of the fee : Jessup *v.* Loucks, 5 P. F. S. 350. It follows the possession having thus revested in the owner he may maintain any action that is necessary to regain his rights or to protect his property : Ridge Turnpike Co. *v.* Stoever, 6 W. & S. 379.

If further argument were needed to fortify this position, it might be found in the fact that in the act not one word is discoverable which gives damages to the owner of the land for the taking of the fee. On the other hand, the commissioners who were to be appointed to make the assessments were to be confined to " such damages as they think any person will sustain, or have sustained, by the opening of the said canal through his or her lands, or by the construction of embankments, reservoirs, &c. or for any materials used in the construction thereof or from the diversion of water." But if compensation was not allowed for the taking of the fee in the land no such fee could be taken. This company, as we have already seen, had the right to take and hold lands in fee, but such taking must be by gift or purchase and not by the right of eminent domain ; that right extended not beyond a use and occupation, and we cannot agree to enlarge it by implication.

But it is urged, that, by the act of the legislature, the Pennsylvania & Ohio canal was made a public highway, and that therefore the state had the undoubted right to grant the use of that highway to the present corporation, and that without compensation to any one. But this proposition is founded upon a premise that will not bear scrutiny. In the first place, this public highway belonged to a private corporation, and it was public only in this, that the public had the right to use it by paying the tolls which the company might see fit to charge. It was a public highway in the sense that a tavern is a public house. Any one might float a boat over the one, under the same conditions that he might stop at and demand entertainment in the other, that is, by paying the proper charges. Thus, whilst the canal company held its franchise subject to a qualified public right, yet its navigable way was its own property, and was by no means like a common road or street over which the commonwealth has the exclusive control, and which it may devote to corporate uses. Without the consent of the canal company the state could not, in the absence of provision for compensation, have appropriated this canal to the use of another company, any more than it could so appropriate the property of a private person. It is thus made patent that the attempt to bring this

[Bruck v. Mausbury.]

case within that class of cases, in which is recognized the right of the commonwealth to authorize a railroad to lay its track on a common road or street, cannot be sustained. In the second place, it was only as a canal that the improvement of the Pennsylvania & Ohio Company could be regarded even as a quasi public highway. It was to the canal that the legislature gave that character, and to nothing else, and when it was abandoned as a canal its character as a highway went with it.

We may here add, in order to avoid all mistakes and misapprehensions, that the defendant may secure a right of way, and save the work and property which it has put upon the plaintiff's land, by having an assessment of damages as provided by law, and if the plaintiff should refuse a stay of execution until that can be accomplished, the court below, on application, may, for that purpose, interpose its injunction: Justice v. The Nesquehoning Valley Railroad Co., 6 Nor. 28.

The judgment is affirmed.