## WILLIS BENHAM AND WIFE *vs.* EDWIN W. POTTER AND ANOTHER.

In 1829 a canal company, under power given by its charter, located and constructed its canal along the west side of a certain highway and within its limits, taking in land on the east side for a substitute highway, its charter authorizing it to make changes in highways where necessary. The substitute highway has ever since been used by the public and kept in repair by the town. In 1846 a company that had succeeded to all the rights of the canal company, was authorized to construct a railroad along the line of the canal. It did so, locating its track along the east bank of the canal at the place in question. In 1853 the canal was wholly abandoned. In 1880 the company, for a consideration paid by the town, abandoned the use of the canal bank for its railroad track, released to the town all its rights and interest in the old highway, and located its track elsewhere. Held—

1. That the adjoining owner had owned the fee of the land occupied by

the ancient highway to its centre, subject to the right of the public to pass over it.

2. That on the legal establishment of the substitute highway the part left to the canal company ceased to be highway and the adjoining owner owned the fee subject only to the easement of the canal.

3. That when the canal was abandoned and the railroad track was removed the land became freed from the easement held by the company, and the unincumbered property of the adjoining owner.

[Argued June 6th—decided June 27th, 1884.]

ACTION for an entry upon the plaintiffs' land and cutting down trees and removing fences; brought to the Court of Common Pleas and tried to the court before *Torrance, J.* Facts found and judgment rendered for the plaintiffs. Appeal by the defendants. The case is fully stated in the opinion.

*T. E. Doolittle* and *J. H. Webb*, for the appellants, cited, to the point that the *locus in quo* had never ceased to be a part of the public highway—Angell on Highways, § 326; *Sherwood* v. *Weston*, 18 Conn., 45; *Waterbury River Turnpike Co.* v. *Town of Litchfield*, 26 id., 209; *Imlay* v. *Union Branch R. R. Co.*, id., 249; *Town of Waterbury* v. *Hartford, Prov. & Fishkill R. R. Co.*, 27 id., 146, 156; *Town of Derby* v. *Alling*, 40 id., 436. And to the point that, if it had, the acts and declarations of the plaintiffs amounted to a dedication of it as a highway—Angell on Highways, §§ 142, 157; Washb. on Easements, 138; *Noyes* v. *Ward*, 19 Conn., 264, 268; *Chapin* v. *The State*, 24 id., 240; *Green* v. *Town of Canaan*, 29 id., 172; *Guthrie* v. *New Haven*, 31 id., 320; *Connehan* v. *Ford*, 9 Wis., 244; *The People* v. *Jones*, 6 Mich., 176; *Lessee of Fulton* v. *Mehrenfeld*, 8 Ohio St., 444; *State* v. *Atherton*, 16 N. Hamp., 215; *Hunter* v. *Trustees of Sandy Hill*, 6 Hill, 407; *Ward* v. *Davis*, 3 Sandf., 520; *Hobbs* v. *Lowell*, 19 Pick., 409; *Cole* v. *Sprowl*, 35 Maine, 170; *State* v. *Wilson*, 42 id., 9; *Brakken* v. *Minn. & St. Louis R. R. Co.*, 29 Minn., 42; *Gentleman* v. *Soule*, 32 Ill., 280; *Rees* v. *City of Chicago*, 38 id., 336; *Cincinnati* v. *Lessees of White*, 6 Pet., 431.

*C. S. Hamilton*, for the appellees.

PARK, C. J.   The facts of this case are as follows:—

Since the 10th day of April, 1872, the plaintiffs have been the owners in fee, and have been continuously in possession, of the premises described in their complaint. The premises are situated on the west side of an old road laid out in 1686, running from the city of New Haven northerly, and is six rods wide as originally laid out.   The *locus in quo* lies in front of these premises, and is wholly within the original limits of the ancient highway, and as it was repaired and used by the public down to the year 1822.

In that year the legislature incorporated the Farmington Canal Company, with power to construct a canal from the city of New Haven northerly through the town of Hamden. The company were authorized, whenever necessary, to construct their canal upon existing highways along its line; but in all such cases they were required to restore such highways to their original usefulness, by constructing other highways for the parts taken.

The company constructed their canal, and completed the same in the year 1829.   They constructed it upon the highway in front of the plaintiffs' premises, and upon the westerly part of the same.   They made a substitute highway for the part thus taken, on the eastern side of the highway and adjoining the same.   The substitute highway has been repaired and used by the public as a highway continuously down to the present time.

In the year 1836 the legislature incorporated the New Haven and Northampton Company.   This company was invested with all the powers and privileges of the Farmington Canal Company; and in the year 1846 it was authorized to construct a railroad from New Haven to Northampton along the line of the Farmington canal.

The company possessed the powers of the canal company in regard to taking existing highways by substituting others whenever necessary in constructing their railroad.   They constructed their road in front of the plaintiffs' premises upon the east bank of the Farmington canal, and wholly

Benham *v.* Potter.

within the original limits of the ancient highway. The canal ceased to be used and was abandoned in 1853.

During the existence of the canal the plaintiffs' grantors occupied and improved whatever was left of the old highway upon the westerly side of the same. After the canal was abandoned they filled in the ditch left by it in front of their premises, and built a fence enclosing some twenty feet in width of the ancient highway. The land thus enclosed continued in the possession of the plaintiffs and their grantors down to the time the fence was removed by the defendants in the year 1882.

Soon after the company commenced the running of their trains upon the railroad complaint was made that the nearness of the track to the highway, as it then existed, endangered public travel upon the highway. The controversy resulted in an agreement between the town and the company, made in June, 1880, the substance of which was that the company would remove their track to a safe distance from the highway, and deed to the town all their right and interest in the highway, upon the consideration that the town would pay the company the sum of $14,000. This agreement was carried into execution, the company releasing to the town all its interest in the old road between certain points, embracing the place in question, and the railroad track was removed from the highway in front of the premises of the plaintiffs.

About the first of November, 1882, the selectmen of the town commenced to widen the highway in front of the plaintiffs' premises to the west line of the ancient highway, with the knowledge and consent of the plaintiffs; and with their consent took down the fence within the limits of the old highway and cut down the trees within such limits, and graded the land, which work they prosecuted till the sixteenth of the same month, when the plaintiffs withdrew their consent and forbade the defendants from further continuing the work. The work was however continued and this suit was brought.

These are the principal facts; and the question is, was

the *locus in quo* public highway or not, when the defendants did the acts complained of after the 16th day of November, 1882?

It is elementary law that the owner of land bounded upon a highway owns the fee of the soil to the center of the highway, unless special circumstances show the contrary. Here no such circumstances exist; therefore it must be taken as a fact in the case that the plaintiffs owned the fee of the soil in front of their premises to the center of the ancient highway.

It is also elementary law in this country that public highways are in the nature of public easements, which consist in a right of the public to pass over them at all times, and a right in the public authorities at all times to enter upon them for the purpose of keeping them in good and sufficient repair.

Easements of this character may cease to exist, like all other burdens upon land, and when they do the land is freed from the encumbrance as completely as though it had never existed, and the owner of the soil has an absolute title to the same. Angell on Highways, sec. 326, says:—"From the principles already declared it necessarily results that when the public easement is relinquished or vacated, the owner of the soil is restored to his original dominion over the same."

The question then arises, what was the effect produced, when the Farmington Canal Company constructed their canal upon the highway in front of the plaintiffs' premises, and made a substitute highway in the place of the one thus taken, in accordance with the provision of their charter, that "in all cases where any road or public highway is so located, that said canal cannot be judiciously laid out and made without interference therewith, * * * said corporation may by their engineer cause such road or roads to be so shifted and altered as that said canal may be made on the best site of ground for the purpose?"

The alterations in highways thus made were manifestly intended to be perpetual. No reason could possibly exist

why they should not be. The altered highways became highways to all intents and purposes, and could not thereafter become extinguished but by the mode provided by law for the extinguishment of all highways. And furthermore, the finding in this case shows that the substitute highway had been used by the public and repaired by the town for a period of more than fifty years when this suit was brought; and during all that time no use whatever was made by the public of the old road in front of the plaintiffs' premises, neither did the town exercise any control over it or repair it, till they did the acts complained of in this suit in 1882.

If all this does not work an extinguishment of the old road, and does not make the new road a substitute for it, it is difficult to see how it could be done.

The error of the defendants consists in the assumption that the substitute way was constructed to exist no longer than the old road was encumbered by the canal. But what foundation is there for this claim? There is no mode known to the law for the construction of highways for such a purpose, and certainly there is nothing in the charter of the Farmington Canal Company to that effect.

But it is said that if the *locus in quo* had ceased to be a part of the public highway, it yet again became such in November, 1882, by the unequivocal conduct and declarations of the plaintiffs, amounting to a dedication of the same to the public for a highway, and an acceptance of the same by the public.

It does not appear that this claim was clearly and distinctly made in the court below, as the law and the rules of this court require; and for this reason it ought not to be considered by this court.

But there is no finding of the court below on the subject of dedication. All there is, which has any bearing on the question, consists in the fact that the court has found that the acts of the defendants previous to the 16th day of November, 1882, were done with the license and permission of the plaintiffs, and that therefore the plaintiffs could not

recover for them.  This was found, not on the subject of dedication, but on the question whether the plaintiffs could or not recover damages for all the acts of the defendants. Dedication consists largely of an intent to dedicate.  Intent is a fact to be found.  This court cannot find it.  Therefore there is nothing for this court to consider on the subject.

There is no error in the judgment appealed from.

In this opinion the other judges concurred.