### O. T. LYON v. W. H. MCDONALD.
#### No. 6645.

**1. Fee in Right of Way Condemned by Railway Company.** — The fee in land condemned by right of way proceedings at instance of a railway company remains in the original owner.

**2. Same—Statutes Construed.**—Revised Statutes, articles 4210, 4211, 4206, and 4179 discussed, and their intent held to be that the fee is not appropriated by condemnation proceedings for right of way, etc.

**3. Use of Right of Way.**—The railway company could not legally appropriate or license the appropriation of the right of way obtained by condemnation adjoining its railway to private or business purposes against a public use.

**4. Same.**—If a railway company acquire the right of easement for public purposes and its own necessities by proceedings of condemnation, and change the use to private purposes, such change will amount to an abandonment and the owner will have his remedy: e. g., the railway company gave appellant license to use part of its right of

way for a lumber yard.   *Held*, the original owner was entitled to recover the rental value of the premises so occupied from the tenant holding under such license.

5.   **Obstruction of View.**—Plaintiff suing for damages for the illegal use and occupancy of his land upon the right of way could not recover for obstruction of his view from adjoining land owned by him.   No facts were alleged showing injury, and exceptions should have been sustained to the claim.

APPEAL from Hill.   Tried below before Hon. J. M. Hall.

This suit was brought by W. H. McDonald, appellee, against O. T. Lyon, appellant, September 29, 1885.   On October 1, 1887, plaintiff filed his second amended original petition, alleging ownership in fee simple on August 16, 1882, of a certain lot of land in Hillsboro, Texas, described in exhibit A attached to his petition.   The petition alleged a trespass by defendant on August 16, 1882, upon said lot by an illegal entry thereon, and by the erection of houses and sheds thereon, and by the obstruction thereof with large lots of lumber, to plaintiff's damage $1000, and a continuous use and occupancy since August 16, 1882, of said lot by means of said buildings, sheds, and lots of lumber, to plaintiff's damage $100 per month, which is the reasonable value of such use and occupation since August 16, 1882. Plaintiff further alleged ownership in a tract of land described in exhibit B attached to said petition, and adjoining the tract described in exhibit A.   He alleged that the land described in exhibit A had been condemned according to law by the Missouri, Kansas & Texas Railway Company for public use, and that said land was in use and might be used by the Missouri Pacific Railway Company, which succeeds the Missouri, Kansas & Texas in its franchise, as a right of way and other uses for the purpose of their said business as a railway corporation, but that the fee and the right of use for purposes other than railway purposes and not inconsistent with the use for railway purposes remained in plaintiff.   That the use and occupation by defendant of said premises is wholly unauthorized and is in no way necessary for the business of said corporation, and is a violation of plaintiff's right.   That the land described in exhibit A intervenes between the depot buildings and the land described in exhibit B; that plaintiff in the use and enjoyment of the land described in exhibit B should have the right of free passage through the land described in exhibit A to and from the railway and its depot buildings, platform, etc.   That by the erection and construction of said houses, sheds, etc., he has been deprived of free passage through the same to the railway and depot buildings, and the view from the same has been obstructed, and that said illegal use and occupation by defendant of the land described in exhibit A has damaged the land described in exhibit B in the sum of $50 per month since August 16, 1882.

Defendant answered by general demurrer and special exception that the injury alleged by reason of the obstruction of access to his lots is not such as can be the basis of a recovery of damages, because plaintiff shows no right to use the premises occupied by defendant for such purpose of

access to his lots.  The court sustained this exception, and plaintiff filed a trial amendment alleging that the land described in exhibit A intervenes between the depot buildings and the land described in exhibit B, the premises described in exhibit A being at the depot station, and that he should have the right of free passage through the same to and from the railway and its depot buildings and platforms, which right he has been deprived of by the erection of the sheds, houses, etc., and by the use made of the same by defendant, whereby the value of· his lots described in exhibit B has been depreciated, and petitioner damaged as stated in his second amended petition.  This amendment was held by the court to cure the defect in the petition.

Defendant also answered by general denial and a special plea justifying his use of the premises under license from the railroad company, and defending such license and use as proper for facilitating its business.

The cause was tried by the court and judgment rendered for plaintiff for $2147.50, and defendant appealed.

Other matters are given in the opinion.

*R. C. Foster* and *A. E. Wilkinson,* for appellant. —1.  The court erred in finding as matter of law upon the facts admitted and found that the use of the grounds by defendant was improper and unlawful and that plaintiff was entitled to recover damages therefor, and in refusing to render judgment for defendant on the facts as found and rendering same for plaintiff.  Railway v. Richardson, 91 U. S., 468; Pierce v. Railway, 24 Am. and Eng. Ry. Cases, 634; Lance's Appeal, 55 Pa. St., 16, 25; Railway v. McLanahan, 59 Pa. St., 23; Railway v. Williamson, 14 Am. and Eng. Ry. Cases, 35; In Re Railway, 77 N. Y., 248; Pierce on Rys., 159, 160, 402; Mills on Em. Dom., sec. 58.

2.  The court erred in finding as matter of law upon the facts found that plaintiff was entitled to recover as damages from defendant, by reason of his use of said premises, the rental value of said premises for the purpose of a lumber yard during the time they were so occupied.  Sedg. on Dam., 126; 1 Wood's Ry. Law, 768, 770, 771, note 1; Pierce on Rys., 159, 160; Mills on Em. Dom., sec. 208; Jackson v. Railway, 25 Vt., 150; 1 Redf. on Rys., 264, and note.

3.  Plaintiff was not the owner of an estate in fee of the land in question, and it was error to award him damages for injuries to his supposed rights as such owner, because the fee passed to the railway company by its condemnation for depot grounds and was not left in the former owners nor acquired from them by plaintiff by his subsequent suit.  Rev. Stats., arts. 4211, 4180, 4206; Park Comrs. v. Armstrong, 45 N. Y., 234; Heyward v. The Mayor, 7 N. Y., 314; De Varaigne v. Fox, 2 Blatch., 95; Haldeman v. Railway, 50 Pa. St., 425; Water Works v. Burkhart, 41 Ind., 364; Dingley v. Boston, 100 Mass., 544; Mills on Em. Dom., sec. 50; Challis v.

Railway, 16 Kan., 117; Railway v. Bruce, 10 Am. and Eng. Ry. Cases, 11, and notes; Prather v. Tel. Co., 14 Am. and Eng. Ry. Cases, 20, 21, and notes.

4.   Plaintiff was erroneously awarded damages for injury to his rights as owner in fee of the land in question, because the facts found by the court showed that independent of the judgment in his favor against the heirs of Thomas Johns for the recovery of the land plaintiff had no title, and the judgment was no evidence of title as against defendant, who was not a party to the suit.   Pratt v. Jones, 64 Texas, 694; Thorn v. Newsom, 64 Texas, 164; Foster v. Powers, 64 Texas, 247; Lyles v. Woods & Co., 58 Texas, 416.

5.   The court erred in overruling the second special exception of defendant to plaintiff's petition and trial amendment thereto, and in its findings of fact and in its conclusions of law therefrom in holding defendant liable for damages to the land described by obstructing the free access to and from the same across the depot grounds.   Pierce on Rys., 160, 161; 2 Wood's Ry. Law, 769, note 1.

*W. L. Booth* and *B. D. Tarlton*, for appellee.— 1.  Upon the facts admitted and found the use of the grounds by defendant was improper and unlawful, and plaintiff was entitled to recover damages therefor.  Proprietors v. Railway, 104 Mass., 1; Whitbeck v. Cook, 15 Johns., 482; Mills on Em. Dom., sec. 57; Bailey v. Sweeney, 9 Atl. Rep., 543; Heard v. Brooklyn, 60 N. Y., 242; Story v. Brooklyn, 68 N. Y., 1; Lance's Appeal, 55 Pa. St., 25; Railway v. Davis, 43 N. Y., 137; Railway v. McLanahan, 59 Pa. St., 23; Eldridge v. Smith, 34 Vt., 484; Railway v. Cowardin, 11 Humph., 398.

2.   Upon the facts found plaintiff was entitled to recover as damages from defendant, by reason of his use of said premises, the rental value of said premises for the purpose of a lumber yard during the time they were so occupied.  Proprietors v. Railway, 104 Mass., 1; Mills on Em. Dom., sec. 57.

3.   Plaintiff was the owner of an estate in fee in the land in question, and it was not error to award him damages for injuries to his rights as such owner.   The fee did not pass to the railway company by its condemation of the land in question for right of way and depot grounds. 2 Wood's Ry. Law, 768, and authorities in note 1; Mills on Em. Dom., sec. 49, and authorities in note 1.

COLLARD, JUDGE. — Appellant contends that where lands are condemned by right of eminent domain under the statute for depot and station grounds for railroad purposes the fee is taken.   We think the fee remains with the original owner.   Mills on Em. Dom., secs. 58, 59, 208; 2 Wood's Ry. Law, 770, 77, and note 2; Lance's Appeal, 55 Pa. St., 24;

Pierce on Rys., 159, 160; Heard v. City of Brooklyn, 60 N. Y., 242; 68 N. Y., 1; Railway v. McLanahan, 59 Pa. St., 28.

Articles 4210, 4211, and 4212 of the Revised Statutes refer to lands acquired by purchase by railroad companies, and are not applicable to the question before us. We are not called on at this time to construe these articles. They authorize a railway company to sell lands voluntarily conveyed to it when no longer required for use by the company. It does not follow from this that it could sell or own a fee in lands condemned for its use, nor that it could sell the fee when the fee was not conveyed to it.

It is provided by statute of this State enacted February 7, 1861, and re-enacted in the Revised Statutes, article 4206, that the right of way secured to a railroad in the manner provided by law—that is, by condemnation—shall not be so construed as to include the fee; but it can not be argued from this that land condemned for *depot grounds* passes the absolute fee simple estate.

The act allowing a railway company to take land from the owner for depots, machine shops, or material thereon for the purposes of its incorporation was passed in 1876. It would not be reasonable to conclude that because it was silent as to the fee it was intended the fee should pass merely because the Act of 1861 then in force reserved the fee to the owner in case of condemnation of the right of way. The reason is on the other side. Rev. Stats., arts. 4179, 4206.

It becomes necessary to know what use the defendant by permission of the railway company put the vacant depot grounds to in order to ascertain whether the owner's rights in the fee were interfered with or not. The agreement of the parties and the findings of the court furnish us the facts in this respect as follows:

"About the 15th of February, 1882, defendant O. T. Lyon, who was an extensive dealer in lumber and building materials and shipper of same in large quantities over the said railroad, was permitted by said Missouri Pacific Railway Company to use a portion of the premises so condemned for depot grounds but not immediately needed, the same being south of the depot and immediately adjoining its side track, for the purpose of unloading and storing lumber shipped to him over its railroad. The permission given was verbal and for no particular time, and no rent or compensation was promised or to be paid—the permission given being for the accommodation of both parties, and no compensation being received or required by the said railroad company except the increased convenience and facility afforded for the unloading of its cars of lumber and the avoidance of delay in such unloading by reason thereof.

"Defendant has ever since continued to occupy on the same terms a portion of said grounds about 300 feet north and south and 70 feet east and west, west of and adjoining the side track of said railroad, by unloading and piling lumber thereon from the cars of said railway company and

loading the same therefrom on the wagons of purchasers as sold; and adjoining the west line of said track has erected an office 16 by 16 feet and a shed 220 feet long for sheltering dressed lumber.

"The number of car loads of lumber received and unloaded there during the first ten months was 347 and during the twelve months following 261 cars, and defendant has been constantly receiving and selling lumber during the time he so occupied; and by being permitted to unload and store lumber on these grounds defendant has been enabled to receive and unload the cars of said railway company more rapidly than he could if compelled to haul the lumber to a yard in some other place, and thereby said railway company has avoided much delay of its cars for unloading."

The meaning of this is that the railway company permitted Lyon to use its grounds as a lumber yard for his private business as a lumber dealer, the company being benefited thereby only in having its cars more conveniently unloaded of lumber hauled there for him. It was an exclusive license to him alone and not to the public generally, that he should carry on his trade of lumber dealer on grounds condemned for depot purposes. The company would certainly have had the right to permit the public to so use the grounds in unloading its cars and in receiving freight; but the permission here was to a particular person to so receive his freight bought and sold in his business, to store the same on the ground, to erect sheds for the protection of his property, and to use the premises as a place of business. Such uses were inconsistent with the purposes for which the land was condemned as much so as if it had been used as an ordinary warehouse or grocery store.

It has been held that a railway company might grant a license for the erection and use of buildings on its right of way for convenience in delivering and receiving freight (Railway v. Richardson, 91 U. S., 468), and it has been held that where "the premises were occupied as a station, furnishing food, lodging, horse keeping, and horse hire, and allowing buildings upon it to be used for a boarding house and a stable and some of the land to be cultivated, all for the convenience of passengers and others in order to increase the business of the road," such uses "were incident to its business as a passenger carrier, and consistent with its occupation for the purposes for which the land was taken and with a claim to occupy for those purposes." Pierce v. Railway, 24 Am. and Eng. Ry. Cases, 640.

The doctrine was applied in the foregoing case to show that such an occupation and use would not disseize the owner of the fee, and entitle him to recover the premises because of improper use. These cases, however, do not go to the extent of holding that to use the premises taken for warehouses, shops, trades, etc., by private persons, it would not amount to such an abandonment by the corporation of the easement as would give the owner of the fee a right to damages for such use. If the doctrine

could be stretched to this extent there would be nothing to prevent a railway corporation from having its right of way and all its grounds not in use occupied by warehousemen, store keepers, and all kinds of traders, they paying rent therefor, and plead as an excuse that it was more convenient to the company in receiving and delivering freight.

The correct doctrine is laid down in Lance's Appeal, 55 Pennsylvania State, 25, where it is said that "the right of the Commonwealth to take private property without the owner's consent exists in her sovereign right of eminent domain and can never be exercised but for a *public purpose* supposed and intended to benefit the public either mediately or immediately. The power arises out of that natural principle that private convenience must yield to public wants. The public interests lie at the basis of the exercise of the power, or it would be confiscation and usurpation to exercise it. This being the reason for the exercise of such power, it requires no argument to prove that after the right has been exercised the use of the property must be held in accordance with and for the purposes which justified its taking.  *  *  *  Hence it is that no one can pretend that a railroad company may build private houses and mills or erect machinery not necessarily connected with the use of their franchise within the limits of their right of way."

It was also held in the case that the "fee remained with the owner, and outside of the authorized use, which must be public or incidental to public use, the proprietary right is in the original owner." This right of eminent domain does not extend beyond "the reasonable necessities of the corporation in the discharge of its duties to the public." New York City v. Railway, 77 N. Y., 248. A railway may take private property upon compliance with the statute, paying the damages assessed, for railroad purposes, or it may permit others to do so, but for no other purposes. It can not take more land than is allowed by the law or its charter, or any except for the legitimate purposes of its franchise. Railway v. McLanahan, 59 Pa. St., 23. If it acquire the right of easement for public purposes and its own necessities by proceedings of condemnation, and change the use to private purposes, such change will amount to "an abandonment" and the owner will have his remedy.

It was decided in Proprietors of Lock and Canals v. Nashua & Lowell Railway Company, 104 Massachusetts, 8, that a change of use to purposes of rent to persons engaged in business of their own " did not put an end to the right of use for the legitimate purposes of the franchise" and authorize a writ of entry by the owner, but that in such form of action the owner could establish his right to the fee and recover mesne profits for the use of it.

These questions were discussed in the case of O'Neal and Wife v. City of Sherman, 77 Texas, 182, and the following principles clearly announced:

1.  That the fee continues in the owner after land is condemned for public uses.

2.  "Where land is condemned for a special purpose on the score of public utility the sequestration of the land is limited to that particular use."

3.  If the property be put to a wholly different use, though for public purposes, a new assessment will be required.

In the case before us it is impossible to say that the railroad could have used the premises in question as a wagon yard under the right of easement, and it is equally certain that what it could not do itself it could not license another to do.

Appellant contends that the court erred in finding that plaintiff was entitled to recover as damages the *rental value* of the premises as a lumber yard. We have already seen that mesne profits may be recovered in such cases. Proprietors v. Railway, 104 Mass., 1; O'Neal v. City of Sherman, 77 Texas, 182; Sedg. on Dam., 251.

The land was used as a lumber yard, and the value of such use would be the correct inquiry on the subject of damages, there being no injury to the realty.

Appellant also contends that "the court erred in finding that plaintiff was the owner of the fee during the time the premises had been used by defendant, and especially in finding that he was such owner prior to the 2d day of March, 1883 (the day plaintiff recovered judgment for the land against the heirs of Johns), and in awarding him damages for injury to his rights as owner of the fee during all that time." The petition alleged that plaintiff was the owner of the premises on the 16th August, 1882, and laid the trespass on that day, which is alleged to have been continuous. It is admitted that Thomas Johns, who died in 1867, owned the land (8 acres including the land in controversy) in 1866; that he had lived with a negro woman in the town of Hillsboro, by whom he had two children, Watson and Doak Johns; that in October, 1867, 8 acres of land, including that in controversy, was set aside by an order of the Probate Court of Hill County as a homestead to said Watson and Doak, and that on August 5 and 16, 1882, plaintiff acquired deeds from Watson and Doak Johns. The true white legal heirs of Johns took possession of the 8 acres, including the land in controversy, about July, 1879, the same being then unoccupied; the land in controversy was condemned by legal proceedings for that purpose against the real heirs of Johns for depot grounds and right of way in Hillsboro, on the 20th day of July, 1881, and on the 22d day of September, 1882, the plaintiff brought suit in the District Court of Hill County against the white heirs of Johns to recover the 8 acres, and on the 2d day of March, 1883, a decree was rendered by consent in his favor for the land.

The negro children could not have inherited the land, and the only

right they obtained in the premises was the homestead right granted them by decree of the Probate Court. They had no fee simple estate and conveyed none to plaintiff, and by their sale to him the homestead right was extinguished. The record does not show what title he recovered on in the suit against the white heirs of Johns. He did, however, recover the land from them on the 2d of March, 1883, and in favor of this judgment it will be presumed that he had title superior to that of the heirs at the time his suit was brought, to-wit, on the 22d of September, 1882. Their ancestor being the admitted owner the judgment against them would constitute a link in plaintiff's title and would vest in him the paramount title to the fee, but it would not in any way interfere with the easement previously acquired by the railroad. This suit is not intended to contest the right of the railway to the easement.

We find plaintiff with title to the fee, then, on the 22d day of September, 1882, by virtue of his judgment, and not on the 16th day of August, 1882. He was only entitled to the rental value of the fee from the 22d of September, 1882, and not from the 16th day of August, 1882, as found by the court.

Appellant in his last assignment of error complains of the ruling of the court in failing to sustain his exceptions to plaintiff's petition as to damages to his lot adjoining the right of way, and in holding defendant liable for damages by reason of obstructing the view of plaintiff from the lot.

The petition alleged that plaintiff had the right of free passage through the land occupied by defendant, and by such occupancy he was deprived of this privilege, and that the view from his lot was obstructed by the houses, sheds, etc., erected by defendant. The court sustained the exception to the petition setting up the right of plaintiff to free passage over the grounds, but held the petition good as to the averment of obstruction to the view from the lot. Plaintiff had no right of passage over the grounds of the railway company, and was not entitled to damages because he was deprived of such use. He was not prevented from passing at any public crossing. Pierce on Rys., 159, 160.

The petition does not show what advantage or benefit there was in such a view or in what way any damage could result by obstructing it. The mere fact that a view is obstructed from one place to another does not of itself import an injury. We think the exceptions to this part of the petition should have been sustained. The court's findings of damages on this branch of the case was not only on account of obstructing the view from this lot, but because of deprivation of use in crossing the railroad grounds, because the lot was valuable or would be for a cotton yard; that the proximity of the lumber on the lumber yard increased the danger of fire to cotton that might be stored on the lot and enhanced the rate of fire insurance. After sustaining the exceptions to the petition holding that

plaintiff had no right to free passage over these grounds, there was nothing left in the petition upon which the claim for damages rested but the averment as to obstructing the view. Had this allegation been good no damages could have been assessed for other injuries not alleged, and it was error to award such damages.

Our conclusion is the judgment of the lower court should be reversed and the cause remanded.

*Reversed and remanded.*

Adopted June 24, 1890.