HENRIETTA MUHLE v. THE NEW YORK, TEXAS & MEXICAN
RAILWAY COMPANY.

No. 103.

**1. Condemnation Proceedings—Conclusiveness of Judgment—Pleading.**

A widow brought suit for recovery of town lots, alleging that the defendant, a railway company, had obtained a judgment for the lots for a freight depot against her husband and herself; that she and her husband continued to occupy the lots, and that the railway company had prosecuted to judgment in the District Court an injunction suit against herself and husband; that subsequent to her husband's death she had been arrested for contempt in violating the injunction; and that upon a second arrest for contempt proceedings her house had been removed from the lot, the railway thereafter having possession; that the condemnation proceedings " were illegal," and the injunction proceedings "contrary to law." The petition also alleged abandonment of the

lots as a freight depot. *Held*, that exceptions to the petition, save as to the right from the abandonment, were properly sustained; there being no allegations showing the invalidity of the judgments attacked. 463

## 2. Limitation.

Defendant in condemnation proceedings remained in possession of the land condemned subsequent to the condemnation. Injunction was perpetuated restraining their further occupancy. Contempt proceedings followed, in which in defense limitation was pleaded. *Held*, even if such possession can be construed *adverse*, yet the contempt proceedings concluded the issue as to limitation ............................ 463

## 3. Condemnation Proceedings only Affect the Use.

Condemnation proceedings by a railway company pass only the right to the specific use for which the property is sought, and it seems that upon a permanent abandonment of the use for which the condemnation was had, the land is relieved of the burden cast upon it, and the owner of the fee is restored to his complete dominion over it ............... 464

## 4. Abandonment of Use—Practice.

When property condemned to a special use by a railway corporation has never been appropriated to such use, and there are circumstances tending to show that the intention to use it for the special purpose has been permanently abandoned, it would devolve upon the corporation to explain the nonuser, and to show that the abandonment is temporary if in fact it be not permanent ................................ 464

## 5. Owner of the Fee in Land Condemned.

Until the property condemned is applied to the use for which it was taken, the owner of the fee has the right to the possession and enjoyment.. ...................................................... 465

ERROR to Court of Civil Appeals for First District, in an appeal from District Court of Victoria County.

The facts sufficiently appear in the opinion.

*Fly & Hill*, for plaintiff in error.—1. The court erred in holding the matters set out in plaintiff's petition were res adjudicata, this being a direct proceeding to set aside the judgment of the court granting the injunction, in which suit the facts herein alleged were not set up and the rights claimed not adjudicated. Hays v. Railway, 62 Texas, 397.

2. This being a suit of trespass to try title, on the ground that appellee has ceased to use the lots for purposes for which condemned, and that the judgment of condemnation was never authorized, for the reason that there never had been any use for the lots for purposes for which condemned, the fee being in appellant, she can recover. Mills on Em. Dom., sec. 57; Lock v. Railway, 104 Mass., 1; Whitbeck v. Cook, 15 Johns., 483; Railway v. Bruce, 102. Pa. St., 23; Hooker v. Turnpike Co., 12 Wend., 371.

3. The petition to condemn property must set out the object for which it is sought to be condemned. Rev. Stats., art. 4182; 22 Am. Law Reg., 481; Pierce on Rys., 157–159; Cool. on Const. Lim., 5 ed., 656, 693; Dill. on Mun. Corp., sec. 603.

4. When property is taken for use of the public it must be devoted to that purpose. Cool. on Const. Lim., 657; O'Neal v. City of Sherman, 77 Texas, 182; Barclay v. Howell's Lessees, 31 U. S., 498; Imlay v. Railway, 26 Conn., 255; The State v. Lovenold, 34 N. J., 201; Railway v. Sheav-mill, 7 Wall., 272; Barney v. Reobuck, 94 U. S., 324; Mills on Em. Dom., 357.

5. A diversion of property to a use inconsistent with purpose for which it was originally taken is an abandonment. 6 Am. and Eng. Encycl. of Law, 603; Dill. on Mun. Corp., art. 590; Taylor v. Hampton, 17 Am. Dec., 710, and authorities; Whitbeck v. Cook, 15 Johns., 483; Mills on Em. Dom., sec. 57.

6. The establishment of a depot at another place was an abandonment of the easement. Taylor v. Hampton, 17 Am. Dec., 710, and authorities.

7. The holding possession after condemnation and after injunction, enjoining her from holding the lots, was adverse to claim of appellee. Taylor v. Hampton, 17 Am. Dec., 710.

8. The holding after condemnation and after the injunction, with no attempt on part of appellee to assert its right of possession, was peaceable. Taylor v. Hampton, supra, and authorities; Mills on Em. Dom., sec. 341; Rider v. Striker, 63 N. Y., 136.

9. The peaceable adverse possession for five years under her deed duly recorded, and paying all taxes, would give appellant title against one with adverse title, and also against one only claiming right of possession. Taylor v. Hampton, supra; Mills on Em. Dom., sec. 341; Rider v. Striker, 63 N. Y., 136.

*Proctors*, for defendant in error.—1. This was not a direct attack upon the judgment of the District Court of Victoria County, granting perpetual injunction against appellant, and if so intended, appellant's petition hardly set up a single requisite of such attack.

2. Appellee's contentions were res adjudicata by said condemnation, injunction, and contempt proceedings, and all matters in issue as to said possession were fully settled up to the date of said last order adjudging appellant in contempt.

3. Any defense which might have been properly asserted should be asserted, otherwise it will not avail as a matter of relief in another distinct proceeding subsequently brought. Nichols v. Dibrell, 61 Texas, 540.

4. Where any state of facts is a necessary condition to the adjudication, then the adjudication is conclusive of those facts. The estoppel is not confined to the judgment, but extends to all steps involved in it as necessary steps or groundwork upon which it must have been founded. 2 Black on Judg., secs. 613, 615; Benlew v. Shannon, 99 Mass., 200.

5. Appellant's petition showed no abandonment of its easement, and no such change, if any, in use as would avail appellant.

On abandonment of easement and what necessary to constitute same: 1 Wood's Ry. Law, sec. 232; 3 Wood's Ry. Law, sec. 232; 6 Encycl. of Law, 603; Tied. on Real Prop., sec. 606; 6 Laws. Rights, Rem. and Prac., 4531, 4532; Note to Wyman v. Hurlburt, 40 Am. Dec., 467; Note in 14 Am. St. Rep., 282; Louisiana Statute, arts. 815, 816; Eddy v. Chase, 140 Mass., 471; Toniller's Droit Francais, lib. 8, title 6, secs. 5–7; Corning v. Gould, 16 Wend., 531; Dyer v. Sandford, 43 Am. Dec., 399; Bowen v. Team, 60 Am. Dec., 127; Webber v. Chapman, 80 Am. Dec., 111; Hamilton v. Railway, 1 Md., 533; Hoggatt v. Railway, 34 La. Ann., 624.

On what change in use is material, and the effect of such change: 1 Wood's Ry. Law, 718, 719; 7 Laws. Rights, Rem. and Prac., 6127; Mills on Em. Dom., sec. 57; 6 Encycl. of Law, 603; Hoggatt v. Railway, 34 La. Ann., 624; Hamilton v. Railway, 1 Md., 533; 6 Laws. Rights, Rem., and Prac., 4533; 2 Wood's Ry. Law, sec. 234.

6. The petition showing no act of reliance upon appellee's nonuser of said easement, and only showing an opportunity to use said easement extending for some eleven months, and nonuser during said limited period, allegation and proof of an intention to abandon said easement were most material. Tied. on Real Prop., sec. 606; Corning v. Gould, 16 Wend., 531.

GAINES, ASSOCIATE JUSTICE.—The plaintiff in error brought this suit against the defendant in error to recover two lots in the city of Victoria. In her petition she alleged, in substance, that in the year 1882 she and her husband were the owners and in possession of the land sued for, occupying it as their homestead; that in that year the defendant railway company instituted proceedings under the statute to condemn it for railway purposes, and procured a judgment for its condemnation accordingly; and that she and her husband continued in possession of the lots, occupying them as their homestead, until May, 1883, when the defendant sued out a writ of injunction against them, which upon final hearing was made perpetual.

It was further averred, that notwithstanding the injunction, they remained in possession until the death of her husband, and that afterwards she continued to hold possession until May, 1889; that the injunction was granted upon the affidavit of the vice-president of the company; that the company desired to use the property for the purpose of a freight depot, but that the company never made use of the lots for that purpose, but had ever since occupied and used as a freight depot a building on another lot, some quarter of a mile distant.

It was also alleged, that in May, 1889, the company caused her to be attached and fined for contempt for not obeying the injunction; that she continued to occupy the lots until November of that year, when she was again proceeded against for contempt, and was imprisoned; and that dur-

ing her imprisonment her house was removed by the defendant from the premises in controversy.

It was further alleged, that the proceedings in the County Court for the condemnation of the property were illegal, and that the proceedings in the District Court in the injunction suit were also contrary to law.

The plaintiff also averred, in effect, that she had acquired title to the lots by reason of her adverse possession, and pleaded the statute of limitations.

It was further averred, that if the defendant had ever used the property, or had ever intended to use it for a depot, it had abandoned such use and such intention.

The decree of the District Court perpetuating the injunction is copied in full in the petition, but what act or acts the plaintiff was enjoined to do or not to do does not clearly appear. What the order was which was made perpetual is not shown. It does appear, however, that in the proceedings for contempt the plaintiff in error set up her claim to the property, pleaded limitation, charged that the defendant had never used it for the purpose for which it was condemned, and prayed that the injunction might be dissolved.

The trial court sustained exceptions to all the grounds of recovery set out in the petition, except that of abandonment of the use of the property for the purposes for which it was condemned, and upon the trial of the issue of abandonment directed a verdict for the defendant. There was a verdict pursuant to the instruction, and upon that verdict a judgment for the defendant was rendered. On appeal to the Court of Civil Appeals the judgment was affirmed.

The ruling of the trial court upon the exceptions to the petition was clearly correct. There is no allegation in the pleading tending to show that the judgment of condemnation was void. It appears from the recitals in that judgment, that the plaintiff in this suit and her husband appeared and contested the proceedings. The right to condemn the land was settled by that decree. We also think that the plaintiff was likewise concluded by the decree of the District Court rendered in the suit of the company against her and her husband. While it does not appear distinctly what specific acts were complained of, it is to be presumed that the object of the suit was to restrain the defendants therein from some kind of interference with the rights acquired by the company by virtue of the condemnation.

The plaintiff's claim of limitation, as set up by her in her petition, was equally without merit. It appears from the petition that her possession was maintained in contempt of the decree of the District Court in the injunction suit. If such possession can be deemed "peaceable" within the meaning of our statute, still we think she was concluded by the judgment in the last proceeding against her for contempt of that decree. She al-

leges, that in that proceeding she pleaded limitation and claimed title to the property, and that the court adjudged her not only guilty of contempt, but made an order to place the defendant in possession of the lots.

But we are of the opinion that the court erred in instructing the jury to return a verdict for the defendant. In an opinion by the Commission of Appeals, which was affirmed and adopted by this court, it was determined, that under the provisions of our statutes the condemnation of land by a railroad company for the purposes of a depot passes only the right to the specific use, and not the fee. Lyon v. McDonald, 78 Texas, 71. In such a case it is generally held, that upon a permanent abandonment of the use for which the condemnation has been had, the land is " relieved of the burden cast upon it, and the owner of the fee is restored to his complete dominion over it." Lewis on Em. Dom., sec. 396; Railway v. Bruce, 102 Pa., 23; McCombs v. Stewart, 4 Ohio St., 647; Benham v. Potter, 52 Conn., 248; Dunham v. Williams, 36 Barb., 136.

It is not our province to weigh the evidence or to determine what conclusions the jury should draw from it. But whether or not there was evidence from which the jury might have deduced the conclusion that the company had abandoned any definite intention ever to use the lots for the purposes of a depot, is a question of law which we are called upon to determine. A careful examination of the evidence constrains us to hold that that question should be decided in the affirmative. It is not necessary that we should either detail or discuss the tendency of the evidence adduced upon the trial; and in view of the fact that the case is to be remanded for a new trial, it is better that this should not be done. But in this connection we deem it proper to call attention to the law as laid down by a text writer whose work is frequently cited as an authority.

Gale, in his treatise on Easements, says: " It appears from these cases, that the law has fixed no precise time during which this cessation of enjoyment must continue; the material inquiry in every case of this kind must be, whether there was an intention to renounce the right. Every such alteration of the dominant tenement raises a legal presumption of the intention to give up the right, and it lies with the party who has discontinued the enjoyment to show that such cessation was of a temporary nature only." Gale on Easements, 6 ed., 512.

So where property which has been condemned for a special use by a railroad corporation has never been appropriated to such use, and where there are circumstances which tend to show that the intention to use it for the special purpose has been permanently abandoned, it would devolve upon the corporation to explain the nonuser, and to show that the abandonment is temporary, if in fact it be not permanent. Having it in its power to make direct proof of the facts as they really exist, its failure to do so in such a case is a strong circumstance against it.

But there is still another reason why we think the court erred in not

giving the case to the jury. The plaintiff, as the owner of the fee, had the right to the dominion and control of the property, subject only to the use for which it had been condemned. So long as it was not appropriated to that use, she was entitled to its possession or enjoyment. It was not necessary for her to show a fee simple title in order to recover possession. Rev. Stats., art. 4808. If the case had been submitted to the jury under appropriate instructions, and they had found that the nonuser was temporary and not permanent, it would have been proper to enter a judgment for the plaintiff for title to the land subject to the use of the defendant for depot purposes, and for possession until such time as the defendant should appropriate the property to the use for which it was originally condemned.

In conclusion, we will say, that the land having been condemned for one purpose, the defendant had no right to appropriate it to a different use. A temporary use of a different character, or a failure to use it, would not, however, forfeit the right acquired by the condemnation, provided there existed a definite intention to use it for legitimate purposes at a fixed time in future, or upon the happening of some well defined contingency.

The judgments of the Court of Civil Appeals and of the District Court are reversed and the cause remanded.

*Reversed and remanded.*

Delivered March 5, 1894.