CHICAGO, R. I. & G. RY. CO. v. CLARK. †

(Court of Civil Appeals of Texas. ·Dallas. March 30, 1912. Rehearing Denied April 20, 1912.)

1. TRESPASS TO TRY TITLE (§ 3*)—RIGHT OF ACTION.

Under Rev. St. 1879, art. 4206, which provides that a right of way secured to a railroad by condemnation shall not include the fee, trespass to try title is a proper remedy of one who claims the fee of land in which a railroad claims a right of way by condemnation, as a determination that the road was entitled to a right of way would not be inconsistent with the determination that the plaintiff was entitled to the fee.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. § 3; Dec. Dig. § 3.*]

2. EMINENT DOMAIN (§ 323*)—ABANDONMENT.

A right of way acquired by condemnation may be abandoned whenever it is not used for the purposes for which it was condemned, unless there exists a definite intention to so use it at a fixed time, or upon the happening of a well-defined contingency.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 860–864; Dec. Dig. § 323.*]

3. APPEAL AND ERROR (§ 989*)—QUESTIONS REVIEWABLE.

While a court on appeal may not weigh the evidence to determine what conclusions the jury should have drawn therefrom, it may properly determine whether, in trespass to try title for land condemned by a railroad for depot purposes, there was any evidence to support a finding that the company had abandoned its intention to use the property.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3897; Dec. Dig. § 989.*]

4. EMINENT DOMAIN (§ 323*)—ABANDONMENT.

Nonuser alone will not amount to an abandonment of an easement; but, where a railroad failed to use land acquired by condemnation for seven years, a presumption of an intention to abandon arises, which casts upon the company the burden of explaining the nonuser.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 860–864; Dec. Dig. § 323.*]

5. TRIAL (§ 243*)—INSTRUCTIONS.

In trespass to try title for lands in which a railroad acquired an easement by condemnation, instructions that temporary abandonment of the easement would not entitle the plaintiff to recover, that nonuser of the easement would not show an abandonment or constitute an abandonment of itself, and that abandonment was a question of intention to be gathered from all the circumstances in the case, were merely supplementary to a general charge as .to what would constitute permanent abandonment; and it was not improper as in conflict with such special charges.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 564, 565; Dec. Dig. § 243.*]

6. APPEAL AND ERROR (§ 216*)—PRESENTATION OF OBJECTION—INSTRUCTIONS—NECESSITY OF REQUEST.

Where no special charge was requested defining terms in trespass to try title, the failure of the court to define them cannot be complained of on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 216.*]

7. TRIAL (§ 252*)—INSTRUCTIONS.

Under the law which authorizes a railway company to condemn for right of way a strip not over 200 feet wide, in trespass to try title to land condemned for depot purposes, a charge, submitting that if the jury found that a tract of the land in question was condemned for right of way purposes they should find for the defendant as to a strip of the same 200 feet wide, parallel with the east line thereof, was properly refused, where the evidence showed that there was no railroad track on the lot, and the distance between the east line and the nearest track was 40 feet.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 505, 596–612; Dec. Dig. § 252.*]

8. TRESPASS TO TRY TITLE (§ 45*)—INSTRUCTIONS—CONFORMITY TO ISSUES—SUPPORT IN EVIDENCE.

Where, in trespass to try title to land in which defendant railway company claimed only an easement by condemnation, the general charge correctly submitted the question as to the right to have such an easement and its abandonment, a requested instruction, which submitted that if the jury believed that a part of the property was necessary or useful to protect the safety and lives of passengers upon the defendant's line, etc., they should find for the defendant, "as to this lot," was properly refused as concluding the title to the lot, and not merely as to the easement, and for its consequent conflict with the general charge.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. § 67; Dec. Dig. § 45.*]

9. APPEAL AND ERROR (§ 742*)—ASSIGNMENT OF ERROR—PROPOSITION.

Where neither an assignment of error to the overruling of a motion to set aside a judgment by default for the insufficiency of the citation nor the subjoined proposition point out specifically wherein the citation was defective, they will not be considered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

Appeal from District Court, Dallas County; Kenneth Foree, Judge.

Trespass to try title by T. J. Clark, for the use and benefit, etc., against the Chicago, Rock Island & Gulf Railway Company

and another. From a judgment for plaintiff, defendants appeal. Affirmed.

N. H. Lassiter, Robert Harrison, R. M. Rowland, all of Ft. Worth, Bennett Hill, and Meador & Davis, all of Dallas, for appellants. Etheridge & McCormick, of Dallas, for appellee.

TALBOT, J. T. J. Clark, for the use and benefit of John Marshall, brought this suit on July 12, 1909, in the district court of Dallas county, Tex., in the ordinary form of an action of trespass to try title, to recover from the Chicago, Rock Island & Gulf Railway Company and W. M. Robinson, defendants, two tracts of land described in his petition, and situated in the city of Dallas near the railroad line of the defendant railway company.

Defendant W. M. Robinson filed his original answer on July 26, 1909, pleading a general demurrer and not guilty, and, by way of cross-action against T. J. Clark, John Marshall, and the Chicago, Rock Island & Gulf Railway Company, made the usual allegations of a petition in trespass to try title, and sought to recover, as against all three of said defendants, the title and possession of the two tracts of land above referred to. On August 9, 1909, defendant Chicago, Rock Island & Gulf Railway Company answered plaintiff's petition and Robinson's cross-action by general demurrer, general denial, and a plea of not guilty. Plaintiff, Clark, pleaded, on September 18, 1909, a general demurrer and general denial to Robinson's cross-action. John Marshall, who was named as a defendant in Robinson's cross-action, did not answer. A jury trial was had on January 12, 1911, and a verdict rendered January 13, 1911, to the following effect: (1) For Robinson for the title to the two tracts of land as against Clark, Marshall, and the railway company; (2) for the railway company for a perpetual easement in and upon a small triangular piece of land out of tract 1, such piece being described in the court's charge and in the jury's verdict; (3) that the railway company's easement in the remainder of said tract 1 had been abandoned; and (4) that the railway company's easement in the whole tract 2 had been abandoned. Judgment was entered in accordance with the verdict, and, the railway company's amended motion for a new trial being overruled, said company perfected an appeal to this court, and filed assignments of error. On February 2, 1911, John Marshall filed his motion to set aside the judgment against him, and, said motion being overruled, he filed his appeal bond and assigned error.

The lands sued for are described as follows: First tract: The W. ½ of block No. 1, according to the Murphy & Bolanz map of the city of Dallas, of date 1891, fronting 200 feet on Water street and extending back 50 feet, being north of the Texas & Pacific, east of the Rock Island, and west of the Cotton Belt. Second tract: Beginning at the intersection of the west line of Water street and the south line of Commerce street; thence south along the west line of Water street 255 feet to the north line of the New Process Manufacturing Company tract; thence westwardly, and at right angles with Water street, to the Trinity river; thence northwest with the Trinity river to a point on the south line of Commerce street; thence eastward along the south line of Commerce street to the west line of Water street to the place of beginning.

On the 17th day of July, 1902, the appellant Chicago, Rock Island & Gulf Railway Company filed its petition in the county court of Dallas county, Tex., against the appellee W. M. Robinson for a condemnation of said lands for railroad purposes, and thereafter, by a judgment of said court, the same were condemned by said railway company, as in said judgment recited, "for the purpose of constructing, maintaining, and operating its line of railroad, and for the purpose of making cuts, cuttings, excavations, and embankments, and borrowing and wasting earth necessary in the proper construction, maintenance, and operation of its line of railroad, and for right of way, depot grounds, storage grounds, terminal grounds, loading and unloading pens for live stock, feeding pens for live stock, freight yards, storage yards, track scales, section houses, warehouses, coal bins, coal chutes, material yards, water tanks, wells, switches, spur tracks, turnouts, crossover tracks and toolhouses." By this judgment, it was further decreed that the said W. M. Robinson recover of the railway company as damages for the condemnation of said lands the sum of $5,000.

[1] The first assignment of error of the appellant Chicago, Rock Island & Gulf Railway Company complains of the court's refusal to peremptorily instruct the jury to return a verdict in its favor. The proposition presented is as follows: "Inasmuch as there was no evidence that would have warranted a finding that appellant railway company had abandoned and lost its easement as to any part of the lands in question, a peremptory instruction in appellant's favor should have been given." The court did not err in refusing this instruction. The undisputed testimony, as we understand it, disclosed appellee Robinson's right to recover as to the title of the lands involved, regardless of whether or not the jury should find that title to be incumbered with an easement in favor of the railway company. The easement asserted by the railway company was claimed through and under the appellee Robinson, by reason of the condemnation proceedings; and no evidence of an outstanding legal or equitable title was offered.

It is well settled that an action of trespass to try title is a proper remedy by the owner of the fee against a railway company asserting an easement in land; and that the fee continues in the owner after the land is condemned. By a statute of this state, enacted February 7, 1861, and re-enacted in the Revised Statutes of 1879, art. 4206, it is declared that the right of way secured to a railroad by condemnation, as provided by law, shall not be so construed as to include the fee-simple estate in lands, either public or private; and, in the case of Hays v. T. & P. Ry. Co., 62 Tex. 397, it is said: "If, in a suit by the owner of the soil, the plaintiff shows title to the land and the defendant to the easement, the plaintiff recovers, subject to the right of the defendant to enjoy the easement. If the defendant shows no title of this character, the owner of the land dispossesses him altogether." See, also, Lyon v. McDonald, 78 Tex. 75, 14 S. W. 261, 9 L. R. A. 295; O'Neal v. City of Sherman, 77 Tex. 182, 14 S. W. 31, 19 Am. St. Rep. 743; Muhle v. Railway Co., 86 Tex. 459, 25 S. W. 607; In re Staten Island Rapid Transit Co., 103 N. Y. 252, 8 N. E. 548.

[2, 3] Again, we do not concur in the view that the evidence was insufficient to warrant a finding that appellant railway company had abandoned and lost its easement as to any part of the lands in question. On the contrary, we think the evidence was sufficient to authorize a finding by the jury, as they must have found, that the railway company had never, from the day it condemned the land down to the date of the trial of this cause, appropriated any portion thereof, save and except the small triangular piece in tract No. 1, which was awarded it, to the uses for which it was condemned; and that it had no definite intention to use the land for such purposes, or any of them, at a fixed time in the future, or upon the happening of some well-defined contingency. This being the status of the evidence, the issue of abandonment of the easement claimed by the railway company was raised and properly submitted to the jury for their determination. That there is an abandonment of the easement acquired by condemnation whenever it is not used for the purposes for which it was condemned, unless there exists a definite intention to so use it at a fixed time, or upon the happening of a well-defined contingency, seems to be well established by decisions of this and other states. In Muhle v. Railway Co., supra, the plaintiff brought suit to recover two lots in the city of Victoria. It was alleged, among other things, that the railway company instituted proceedings under the statute to condemn the lots for railway purposes, and procured a judgment for its condemnation accordingly; that the proceedings in the county court for the condemnation of the property were illegal; and, further, that if the railway company had ever used the property for the purposes for which it was condemned, or had ever intended to so use the same, it had abandoned such use and intention. As to this issue, the court directed a verdict for the railway company. After discussing other questions, our Supreme Court, speaking through Mr. Justice Gaines, said:

"We are of the opinion that the court erred in instructing the jury to return a verdict for the defendant. In an opinion by the Commission of Appeals, which was affirmed and adopted by this court, it was determined that under the provisions of our statutes the condemnation of land by a railroad company for the purposes of a depot passes only the right to the specific use, and not the fee. Lyon v. McDonald, 78 Tex. 71 [14 S. W. 261, 9 L. R. A. 295]. In such a case, it is generally held that, upon a permanent abandonment of the use for which the condemnation has been had, the land is relieved of the burden cast upon it, and the owner of the fee is restored to his complete dominion over it.' Lewis on Em. Dom. §: 396; Railway v. Bruce, 102 Pa. 23; McCombs v. Stewart, 40 Ohio St. 647; Benham v. Potter, 52 Conn. 248; Dunham v. Williams, 36 Barb. [N. Y.] 136. It is not our province to weigh the evidence or to determine what conclusions the jury should draw from it. But whether or not there was evidence from which the jury might have deduced the conclusion that the company had abandoned any definite intention ever to use the lots for the purpose of a depot is a question of law which we are called upon to determine. A careful examination of the evidence constrains us to hold that that question should be decided in the affirmative. It, is not necessary that we should either detail or discuss the tendency of the evidence adduced upon the trial; and, in view of the fact that the case is to be remanded for a new trial, it is better that this should not be done. But, in this connection, we deem it proper to call attention to the law as laid down by a text-writer whose work is frequently cited as an authority. Gale, in his treatise on Easements, says: 'It appears from these cases that the law has fixed no precise time during which this cessation of enjoyment must continue; the material inquiry in every case of this kind must be whether there was an intention to renounce the right. Every such alteration of the dominant tenement raises a legal presumption of the intention to give up the right; and it lies with the party who has discontinued the enjoyment to show that such cessation was of a temporary nature only.' Gale on Easements (6th Ed.) 512."

Proceeding, Judge Gaines says: "So, where the property which has been condemned for a special use by a railroad corporation has never been appropriated to such use, and where there are circumstances which tend to show that the intention to use it for the special purpose has been permanently aban-

doned, it would devolve upon the corporation to explain the nonuser, and to show that the abandonment is temporary, if in fact it be not permanent. Having it in its power to make direct proof of the facts as they really exist, its failure to do so in such a case is a strong circumstance against it. But there is still another reason why we think the court erred in not giving the case to the jury. The plaintiff, as the owner of the fee, had the right to the dominion and control of the property, subject only to the use for which it had been condemned. So long as it was not appropriated to that use, she was entitled to its possession or enjoyment. It was not necessary for her to show a fee-simple title in order to recover possession. Rev. Stats. art. 4808. If the case had been submitted to the jury under appropriate instructions, and they had found that the nonuser was temporary and not permanent, it would have been proper to enter a judgment for the plaintiff for title to the land, subject to the use of the defendant for depot purposes, and for possession until such time as the defendant should appropriate the property to the use for which it was originally condemned. In conclusion, we will say that, the land having been condemned for one purpose, the defendant had no right to appropriate it to a different use. A temporary use of a different character, or a failure to use it, would not, however, forfeit the right acquired by the condemnation, provided there existed a definite intention to use it for legitimate purposes at a fixed time in future, or upon the happening of some well-defined contingency."

[4] Nonuser alone does not operate as an abandonment of the easement; and the present case was not submitted to the jury on the theory that it did. The practically undisputed facts, however, as we understand them, showed a failure or cessation of use on the part of the railway company for a period of seven years; and we are of opinion that such failure or cessation raised a legal presumption of the intention to give up the right of easement and cast the burden of proof upon the company to explain the nonuser, and to show it had a definite intention to use the property for a purpose for which it was condemned at a fixed time, or upon the happening of some well-defined contingency. The jury's verdict necessarily embraces a finding that the railway company failed to show that it intended to use the property for any particular purpose at any fixed time, or on the happening of a well-defined contingency; and this finding, in view of the evidence disclosed by the record, is binding upon us. It follows that the trial court did not err in submitting to the jury the issue of abandonment; and that, in deference to the verdict of the jury and the well-settled decisions of this state, it must be held that the railway company, at the time of the institution of this suit, had lost its easement as to all the land in controversy,

except the small triangular piece of tract No. 1, which was awarded to it by the judgment of the lower court. In reference to the authorities cited in support of the propositions contended for by the appellant railway company, it is sufficient to say that they are distinguishable in the facts from the case at bar, or are not in accord with the decisions of this state.

The questions presented by the second, third, and fourth assignments of error, as we understand them, are practically the same as the question raised by the first assignment, and what we have already said disposes of those assignments adversely to the contention of appellants.

[5] The fifth assignment complains that the court erred in giving to the jury the fourth paragraph of his charge, on the ground that it was in direct conflict with special charges Nos. 10, 11, and 12, given at the request of the railway company. We think there was no material, if any, conflict between these charges. As said by counsel for the appellee, the court in the general charge instructed the jury as to what facts would constitute permanent abandonment. At the request of the appellants, he gave charge No. 10, which instructed the jury that temporary abandonment of the property would not be sufficient to entitle the plaintiff to recover. In special charge No. 11, he charged that nonuser alone would not show abandonment; and, in special charge No. 12, he again charged that nonuser of itself would not constitute abandonment, but that abandonment was a question of intention to be gathered from all the circumstances in the case. These charges were not in conflict with the general charge, but were supplementary to and explanatory of it.

[6] The seventh assignment will also be overruled. No special charge was requested defining the expressions, "continuous use," "definite intention," "fixed time," and "well-defined contingency," as used in the court's charge; and, in the absence of such a request, appellants will not be heard to complain of the court's omission to define them.

[7] Appellant's seventeenth assignment of error complains of the court's action in refusing the following charge requested by it, namely: "You are instructed that the law allows a railroad corporation to condemn for right of way purposes a strip of land 200 feet in width, without any necessity or use therefor; and if you find and believe that the west one-half of lot No. 1 was condemned for right of way purposes, among other purposes, and that the same does not exceed 200 feet in width, then you will find for the defendant, as to said west one-half of lot No. 1, and if you find and believe that the second tract, viz., 1.23-acre tract, was condemned for right of way purposes, among other purposes, then you are instructed that as to the strip of same 200 feet wide, para-

lel with the east line thereof, you will return your verdict for the defendant." This charge was properly refused. We have discovered no testimony in the record that the right of way of the appellant railway company was ever laid out on the second tract mentioned in the requested charge. It does show without dispute, as we understand it, that there never was any railroad track on said lot of land; that the right of way of the railway company adjacent to said lot is on Water street; and that there is a distance of at least 40 feet between the west track of the company on Water street and the east line of said lot or second tract. The effect of the charge, as argued by appellee, is to instruct the jury that, if they believed the second tract was condemned for right of way purposes, among other purposes, then to return a verdict for the railway company for a strip of the same 200 feet wide parallel with the east line thereof. In other words, the charge would have authorized a taking from the appellee of a part of his land 240 feet from the track of the railway company for right of way purposes. In no event was the railway company authorized, under our law, to condemn for right of way purposes more than a strip 200 feet wide.

[8] The appellant railway company requested the court to charge the jury as follows: "You are instructed that if you find and believe that the west one-half of lot No. 1, in the city of Dallas, Tex., is necessary or useful for the purpose of protecting the safety and lives of passengers upon defendant's line, or upon the line of the Texas & Pacific Railroad, which crosses it, or necessary for the protection of those engaged in the operation of said two lines of railroad, then you will find for the defendant as to this lot." This charge was refused, and its refusal is made the basis of appellant's eighteenth assignment of error. We think the assignment should be overruled. If a fuller or more specific instruction on the subject to which the special charge related than that given in the general charge was desired, one should have been requested which limited the finding of the jury, in the event they found for the defendant, to the easement claimed, and should not have been broad enough, as the charge in question was, to conclude the title. If the lot referred to in the charge was necessary or useful for the purpose of protecting the lives of passengers or those engaged in the operation of the railroads, as suggested in the special charge, and the appellant was entitled, under the testimony, to have the jury specifically instructed in relation thereto, such a charge should have been so framed as to instruct the jury to limit their findings to the continued existence of an easement in favor of the railway company. The railway company was not entitled to recover the title; and the special charge under con-

sideration, in the form requested, was erroneous in itself, and would have been, had it been given, in conflict or inconsistent with the general charge.

There are several assignments which have not been discussed. These assignments have been carefully considered, and because we are of opinion they point out no reversible error they are overruled.

[9] The appellant John Marshall, against whom judgment by default was taken, assigns as error the court's action in overruling his motion to set aside said judgment, on the ground that the citation issued and served on him, commanding him to appear and answer the cross-action of the appellee Robinson, was not in compliance with the statute; and therefore the judgment rendered against him by default, he not having answered to said cross-action, was null and void. The assignment copies the motion filed in the lower court by Marshall to have the judgment against him set aside, which recites the rendition of the judgment against him, the filing of the cross-action by the appellee Robinson, the issuance and contents of the citation that was served upon him, together with the sheriff's return indorsed thereon. The proposition accompanying this assignment is as follows: "A judgment rendered by default against the defendant will be set aside, unless the citation served on said defendant is in strict accord with the provisions of the law." Neither the assignment nor the proposition point out specifically wherein the citation is defective, or the particular error of which complaint is made. So general, therefore, is the assignment that it is not entitled to consideration under the rules. But, however, if we were disposed to consider the assignment of error, a reading of the citation and the sheriff's return thereon, as disclosed by the record, leads us to the conclusion that they were sufficient to authorize the judgment rendered against this appellant; and that the trial court did not err in overruling his motion to set aside said judgment.

Finding no reversible error in the record, the judgment of the court below is affirmed.