CRAIG et al. v. FT. WORTH & D. C. RY. CO. et al. (No. 8346.)

(Court of Civil Appeals of Texas. Ft. Worth. March 25, 1916. Rehearing Denied April 15, 1916.)

1. EMINENT DOMAIN ☞120 — RIGHTS ACQUIRED—RAILROAD RIGHT OF WAY—FENCES.

Erection of a fence along a building abutting land taken by a railroad for a track and foot passage to its depot is not an additional use, but a means adopted for its protection in the uses enumerated in the decree of condemnation.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 315–319; Dec. Dig. ☞120.]

2. RAILROADS ☞73(3)—RAILROAD RIGHT OF WAY—FENCES—RIGHT OF PUBLIC.

As a matter of law, subjection of a railway right of way to uses as a highway or passway for the patrons of a restaurant or other place of business is inconsistent with its use for railway purposes, since it would largely increase hazard of accidents, so that erection of a fence by the railroad would conserve its rights and protect the public, and is lawful.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 181; Dec. Dig. ☞73(3).]

3. APPEAL AND ERROR ☞265(1)—SCOPE OF REVIEW — PRESERVATION OF EXCEPTIONS—FINDINGS CONTRARY TO LAW.

A railroad having the right as a matter of law to fence its right of way is not bound by the finding of the trial judge that the fence was not necessary to the safe operation of its tracks, and was an additional servitude on land taken by eminent domain, although it failed to except to such finding.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1536, 1538, 1544–1551; Dec. Dig. ☞265(1).]

4. RAILROADS ☞411(1) — FENCING TRACK—STATUTES—OBJECT.

Rev. St. 1911, art. 6603, relating to railroads fencing their tracks, is enacted, not only for the protection of animals, but especially for the protection of human life from derailments caused by striking animals on the tracks. Dec. Dig. ☞411(1).]

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1409, 1415, 1419, 1420, 1423;

5. RAILROADS ☞73(1)—RIGHT OF WAY—USE —RIGHT TO FENCE.

The right to fence a railroad right of way in towns where necessary for the protection of persons who might otherwise go upon the track is incident to the right of way acquired.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 179; Dec. Dig. ☞73(1).]

6. RAILROADS ☞356(1) — OPERATION—INJURIES TO "LICENSEE"—DUTIES.

If a railway company habitually permits the public to use its track as passways at places other than public crossings, such persons become licensees, to whom the railway owes a higher degree of care to avoid injury than it owes to a mere trespasser.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1228; Dec. Dig. ☞356(1).

For other definitions, see Words and Phrases, First and Second Series, Licensee.]

7. RAILROADS ☞73(3)—RIGHT OF WAY—USE —RIGHTS OF PUBLIC.

The owner of the fee has no right of passage over ground condemned by a railway, since he may use the public crossings, and a fortiori he cannot claim such right of passage to his place of business on adjoining land, in behalf of the public.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 181; Dec. Dig. ☞73(3).]

8. APPEAL AND ERROR ☞934(2)—PRESUMPTIONS—FINDINGS.

In a suit to restrain the maintenance of a fence along the right of way near a station, where judgment was for the railroad, every reasonable presumption must, on appeal, be indulged to support it, and, if the issue whether or not, in the absence of the fence, the railroad, in the operation of trains, would be required to exercise a higher degree of care for the protection of the public and its employés, be one of the pivotal issues in the case, as insisted by plaintiffs, it must be presumed that the court found that issue for the railroad.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3777; Dec. Dig. ☞934(2).]

9. EMINENT DOMAIN ☞120—USE ACQUIRED —ADDITIONAL SERVITUDE — NECESSITY OF FENCE—EVIDENCE.

The probative force of the facts that the public was accustomed to pass over a railroad right of way acquired by eminent domain in order to reach plaintiffs' place of business and that persons were accustomed to congregate and loiter there, tending to show that the maintenance of a fence to prevent such use was necessary, and not an additional servitude upon the land, is not destroyed by further evidence that there were places and similar businesses located closer to the right of way of the road not so fenced, especially where it did not appear that persons were accustomed to congregate and loiter about such places.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 315–319; Dec. Dig. ☞120.]

10. RAILROADS ☞359(1) — OPERATION — DUTIES AS TO LICENSEES.

Persons loitering upon a railroad right of way and walking across it at other places than the necessary crossings necessarily impose upon a railroad an added burden to keep a lookout for them.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1238; Dec. Dig. ☞359(1).]

11. RAILROADS ☞73(3) — RIGHT OF WAY—FENCES—MAINTENANCE—ESTOPPEL.

A railroad is not estopped to maintain a fence along its right of way near a station, cutting off access to plaintiff's business by the fact that it permitted him to cut entrances to his place of business to give access to the railroad right of way, since permissive use across unin-closed land does not ripen into a right, however long existing.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 181; Dec. Dig. ☞73(3).]

12. APPEAL AND ERROR ☞934(2)—JUDGMENT —IMPLIED FINDING—ESTOPPEL.

A judgment of the trial court in favor of defendants after claim of estoppel was interposed by plaintiffs, though not specifically referring to the plea, implies a finding adverse to the plaintiffs thereon.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3777; Dec. Dig. ☞934(2).]

13. RAILROADS ☞73(4) — RIGHT OF WAY—RIGHT TO FENCE—ESTOPPEL.

If a railroad has the right to fence its track and permissive use does not ripen into a right on the part of the public to use such way as a passage, the railroad is not estopped by mere knowledge of another's intended use of the property and of expenses incurred looking to such use and by its failure to object to erect the

fence, in the absence of willful desire to mislead such party.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 182; Dec. Dig. ☞73(4).]

14. HIGHWAYS ☞6(1)—PRESCRIPTION—TIME —SUFFICIENCY.

Use by the public as a passage of a railroad right of way for the period of three years is not sufficient to constitute a dedication of the highway by prescription.

[Ed. Note.—For other cases, see Highways, Cent. Dig. § 8; Dec. Dig. ☞6(1).]

15. RAILROADS ☞73(3)—RIGHT OF WAY—INDIVIDUAL RIGHTS—EXTENT.

Even if the use by the public of a passageway over a railroad right of way for three years would constitute a dedication although that is not the law, still an abutting owner could thereby gain no rights different from those of the public, and could not maintain doorways giving ingress and egress to the right of way; that not being a public one.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 181; Dec. Dig. ☞73(3).]

Buck, J., dissenting.

Appeal from District Court, Wichita County; J. W. Akin, Judge.

Injunction proceedings by John Craig and another against the Ft. Worth & Denver City Railway Company and others. From a judgment denying the injunction, plaintiffs appeal. Affirmed.

See, also, 176 S. W. 827.

T. R. Boone, of Wichita Falls, for appellants. Carrigan, Montgomery & Britain, of Wichita Falls, and Thompson & Barwise and G. W. Wharton, all of Ft. Worth, for appellees.

DUNKLIN, J. In the year 1911 the Ft. Worth & Denver City Railway Company, the Wichita Valley Railway Company, the Wichita Falls & Oklahoma Railway Company, and the Missouri, Kansas & Texas Railway Company filed condemnation proceedings to subject for their use a strip of land 24.48 feet wide from east to west and 100 feet long from north to south situated in the city of Wichita Falls, Tex., lying south of Seventh street, and bounded on the north by the south line of said street, the St. Charles Hotel Building lying west of and adjacent to said strip, and the right of way of the Ft. Worth & Denver City Railway Company being adjacent to said strip on its east line. The purpose of said condemnation, as shown in the petition therefor, was as follows:

"Your petitioners would represent and show to the court that it is necessary for said railway company to acquire the possession of said above-described property for the purpose of placing a brick sidewalk upon same to furnish ingress and egress to and from the Union Depot so to be constructed and now in the course of construction, and for the purpose of acquiring the ground upon which to lay one coach track and industrial track, and for additional depot and station ground for said sidewalk as aforesaid."

Upon that petition a decree of condemnation was awarded in which the following appears:

"It is further adjudged and decreed that the sum awarded by said commissioners herein as damages to the adjacent property belonging to said Mrs. Adeline Rucks and the other defendants is only for the construction and maintenance of the two railway tracks described in plaintiff's original petition filed herein, which two tracks are described and to be located in said property taken, said tracks to be for one coach track and for one industrial track, said track to be laid on the eastern border and said industrial track to be located across said property between said coach track and the said St. Charles Hotel Building, the said property to be used also by said plaintiff as a brick walk thereon to furnish ingress and egress to the Union Depot, and that said sum does not compensate said defendants for any other damage for any other use of said property."

On February 2, 1915, John Craig and Lee Downs, lessees of the St. Charles Hotel Building, instituted the present suit to restrain the railway companies from maintaining an iron fence which had theretofore been erected about 8 feet high within 6 or 8 inches of the east wall of the hotel building, and running the entire length of said building, and for a mandatory injunction requiring the railway company to remove said fence, and for damages to their business by reason of the erection of said fence; and from a judgment in favor of the defendants, the plaintiffs have appealed.

This case was before us on a former appeal and, our opinion then rendered appears in 176 S. W. 827. The case was tried by the court without the aid of a jury, and the trial judge filed findings of fact which included, among others, the facts recited above. Other findings by the court are as follows, omitting therefrom the unnecessary repetition of the expression "The court finds that," with which nearly every paragraph of the findings begins, and so changing the language used as to state the findings in a narrative form, but without any other change:

"II. Plaintiffs went into possession of the premises occupied by them on the 5th day of September, 1914, and have since continued to occupy same as a hotel, saloon, and restaurant.

"III. Said restaurant was, and has since continued to be, a restaurant for negroes, while the saloon and hotel was principally for white people, with the negro trade in the rear portion of the saloon. * * *

"VI. The defendant companies at the time they condemned said premises on which this fence is erected began to use the western portion of said premises, being the portion lying next to the plaintiff's business, as a public thoroughfare from Seventh street, in the city of Wichita Falls, Tex., to the Union Depot, on Eighth street, in the city of Wichita Falls, Tex., and in order to make same passable and usable the defendants erected both on Seventh street and Eighth street cement sloping driveways, and then filled said passway in with cinders from Seventh street to Eighth street, and at the point where said passway crossed the Blair-Hughes track the defendant companies erected the usual crossing by placing large, heavy boards between the rails and on each side of the rails.

"VII. When the defendants herein condemned a tract of land 24.48 feet wide just east of the building occupied by plaintiffs, said property, in 1911, they erected and maintained a driveway between Seventh street and Eighth street and

scattered cinders throughout the distance from Seventh street to Eighth street for the purpose of filling up the holes, and for the purposes of making a public passway between said streets and to the Union Depot in the city of Wichita Falls, Tex., and the defendants herein erected and maintained a crossing over the Blair-Hughes house track, and near the end of the premises now occupied by these plaintiffs, which has been used as a public crossing for three years prior to the time plaintiffs entered into possession of said premises.

"VIII. These defendants have only put into use the southeast corner of the premises so condemned by these defendants by erecting the industrial track leading to the Blair-Hughes House, and the defendants so far have never used the remainder of said premises condemned by them in 1911 for the purposes set forth in the condemnation proceedings, except to erect and construct the industrial track which runs across the southeast corner of said premises, and by erecting and maintaining the passageway next to the building occupied by plaintiffs.

"IX. The passageway erected and constructed and maintained by these defendants between Seventh street and Eighth street where the Union Depot in the city of Wichita Falls, Tex., is located has been maintained by these defendants for the use of the public, both for vehicles and foot passengers, continuously, and said passageway lies along and next to the building occupied by these plaintiffs, and along which these defendants erected the fence as heretofore stated.

"X. On September 5, 1914, and for three years prior thereto, there had been maintained a passageway lying and being by the side of the brick building now occupied by these plaintiffs,

"XI. These plaintiffs at the time they entered into said contract for the lease of said premises, and at the time they made the improvements on these premises, thought and believed that said passageway between Seventh street and Eighth street was a public thoroughfare and passageway.

"XII. Plaintiffs relied upon said passageway being a public thoroughfare when they leased and improved said premises for the purpose of occupancy.

"XIII. Plaintiffs cut one door in the side of said building at the time they opened same, about September 5, 1914.

"XIV. Plaintiffs cut the second door in said premises, being the door in the rear of the saloon, about the 1st of November, 1914.

"XV. The expense of cutting these doors was about $12.50 for each door.

"XVI. The defendants and their agents at the time that plaintiffs entered into possession of said premises knew for what purpose they were using and intended to use said premises, and knew that these plaintiffs were expending money on these premises for the purpose of occupancy, and said nothing to these plaintiffs until after they had expended the sum of about $25 toward making openings leading on to this passageway from Seventh street to Eighth street, and which passway lay along and by the side of the building occupied by these plaintiffs, and which was extended from Seventh street to the Union Depot, on Eighth street, in the city of Wichita Falls, Tex.

"XVII. About the morning of January 7 (before 9 o'clock a. m.), A. D. 1915, the defendant companies erected an iron fence about 8 feet high and within 6 or 8 inches of the premises occupied by these plaintiffs, the entire length of said building, and thereby completely blockaded the door leading into the restaurant in the rear part of the premises occupied by these plaintiffs and the rear door of said saloon so maintained on these premises occupied by these plaintiffs.

"XVIII. This fence is erected and maintained by these defendants along the side of this passageway (from Seventh street to the Union De-

pot) and on the premises condemned by these defendants in May, 1911.

"XIX. At the time these defendants erected and maintained said fence on January 7, 1915, they knew for what purpose these plaintiffs were at that time using said building and using these openings and had been using said openings prior thereto.

"XX. Neither the plaintiffs nor any one connected with the premises operated and controlled by these plaintiffs ever permitted or authorized the defendant companies to erect and maintain said fence, but did at the time resist, and have continued to resist, the maintenance of said fence by these defendant companies.

"XXI. The erection and maintenance of this fence by these defendants on the property condemned by them in 1911 is an additional use of said property than that set forth in the condemnation decree.

"XXII. There now exists in Wichita Falls, Tex., several other places where the defendants are operating their railways closer to saloons and restaurants and other businesses, and the defendants have never erected any fence or obstruction along their right of way obstructing the passage over said right of way of the defendants railway company from these other places.

"XXIII. A few times there were seen as many as three or four people standing together by the side of the doors opening on to this passageway during the period from September 5, 1914, to January 7, 1915, and sitting upon beer kegs around said door; occasionally passengers from the trains stopping at the Union Station occasionally walked across the tracks of defendants and entered the back door of said saloon.

"XXIV. There is a distance between house track leading to Blair-Hughes and the door leading into the restaurant from the public passway of 17 feet and 4 inches.

"XXV. There is a distance between house track leading to Blair-Hughes and the door leading from the rear portion of the saloon on to this public passageway of 21 feet.

"XXVI. This industrial track is not used on an average more than four times a week.

"XXVII. For the purpose of operating this industrial track it is not necessary for the safe operation of same for the defendant railway companies to have and maintain the fence so erected by the defendant companies.

"XXVIII. It would not cost to exceed $10 to remove the said fence so erected by these defendants.

"XXIX. Since the erection of said fence by these defendants there is no other opening into said restaurant other than going through the saloon.

"XXX. Since the erection of said fence there is no rear opening to the saloon in which these plaintiffs have been conducting their business.

"XXXI. By reason of the erection and maintenance of this fence from the morning of January 7, 1915, to the night of June 29, 1915, same deprived these plaintiffs of the sale of goods in their saloon to such an extent that the net profits to the plaintiffs arising therefrom would be $710, and by reason of the erection and maintenance of this fence same deprived these plaintiffs up to June 30, 1915, of the rent received by them for the restaurant in the rear portion of said building to the amount of $90.

"XXXII. If said fence had not been erected by these defendants, these plaintiffs would have by means of said restaurant being run, and by means of said doors being opened, have sold goods from said saloon to the extent that the net profits coming to these plaintiffs would have been between the morning of 7th of January, 1915, to the night of June 29, 1915, the sum of $710. If said fence had not been erected, plaintiffs would have been able to rent that portion of said building used by said restaurant from January 7 to June 20, 1915, for $90 more than they were able to rent same."

The following are the trial judge's conclusions of law upon the facts so found:

"In deference to the decision of the Court of Civil Appeals heretofore rendered in this cause, I conclude that the plaintiffs are not entitled to an injunction herein as prayed for, and that the plaintiffs are entitled to no judgment for any damages by reason of the erection and maintenance of the fence by the defendants."

Plaintiffs alleged that the erection of the fence was not authorized by the decree of condemnation, which was the only basis of the defendants' claim of right to erect the fence; that the fence was not necessary for the operation of the defendants' industrial track, or any other use by them of the property so condemned; that the maintenance of the fence was a use of the property additional to that authorized by the condemnation decree; and that it was erected by the defendants for the malicious purpose of annoying and injuring the plaintiffs. Plaintiffs further alleged damages to their business by reason of the erection of the fence such as found by the court.

In their answer the defendants specially denied each and every allegation set forth in the plaintiffs' petition, and specially pleaded that it was necessary for them to erect the fence in order to protect the public and their employés from injury resulting from the use of its track erected upon the strip of land condemned; that the plaintiffs were maintaining a saloon and restaurant for negro patrons in the rear thereof, doors from both of which opened out upon the right of way condemned; that large numbers of vicious and disorderly persons would congregate about such doors and would pass in and out of said places of business, and thus constitute a source of annoyance to the defendants and of injury to the public; that the erection of said fence was for the defendants' own protection, and was not an invasion of any of plaintiffs' rights.

Appellants invoke the well-settled rule announced in Muhle v. N. Y., T. & M. Ry. Co., 86 Tex. 459, 25 S. W. 607, Olive v. Sabine Ry. Co., 11 Tex. Civ. App. 208, 33 S. W. 142, and other authorities, that a condemnation decree passes only the right to the specific use therein awarded, and the right remains in the owner of the fee to use the property in any manner not inconsistent with the uses for which it was condemned. They insist that the facts found by the trial judge, to which no exception was presented in the trial court by the defendants, conclusively show that the right to maintain the fence in controversy was not given by the condemnation decree, and hence that the maintenance of the fence was in violation of the rights reserved by the owner of the fee which passed to plaintiffs as lessees of the hotel property, and that the trial court erred in refusing to grant a mandatory writ of injunction for the removal of the fence and in refusing to award to plaintiffs the damages to their business found by the court. Special stress is laid upon the

findings that the industrial track is located 17 feet 4 inches from the east wall of the hotel building, with a public passageway constructed and maintained by the defendants between the industrial track and said building for the use of vehicles and foot passengers; that the fence is not necessary for the safe operation of the industrial track; that the maintenance of the fence is a use of the property condemned additional to that authorized by the condemnation decree; that the contemplated coach track has never been constructed, and will, when constructed, be located east of the industrial track; and that the plaintiffs have sustained substantial damages to their business by reason of the fact that entrance to the saloon and restaurant from the strip of land in controversy has been cut off.

[1] For a better understanding of the issues it is proper to note at the outset that the maintenance of the fence is not an additional use of the property, but rather a means adopted for the protection of the defendants in the exercise of the uses specially enumerated in the decree of condemnation.

On the former appeal of this case, speaking through Associate Justice Buck, this court, after reviewing the authorities pertaining to the relative rights of the owner of the fee and the railway company to the uses of the property condemned after the same had been condemned, said:

"We feel that it must be held, as a matter of law, that the subjection of the right of way of the railway company to uses of a highway or passway for the patrons of a restaurant or other place of business is inconsistent with the use of said property for railway purposes, and that therefore the appellants in this case were within the rights accorded them under the law when they sought to exclude patrons of this restaurant, and the public generally, from using their right of way as such highway or passway. The use of such property for said purposes would largely increase the hazard of accident, and consequently, the liability of the railway company, and therefore, in preventing its use for such purposes, the railway company would be taking a course, not only within the conservation of its own rights, but in the protection of the public."

[2, 3] We have found no authorities which contravene the correctness of that conclusion, and we adhere to it now. And, if that conclusion is correct, then the findings of fact by the trial court that the maintenance of the fence is not necessary to the safe operation of the industrial track, and is an additional servitude upon the property condemned, cannot destroy the right of the defendants which they have as a matter of law to maintain the fence, and are therefore immaterial, and are of no binding force or effect upon the defendants, even though they did not except to the same as findings of fact.

[4, 5] By article 6603, Revised Statutes 1911, the duty is imposed upon railway companies to fence their track in localities where stock are permitted to run at large, and also

in localities which have adopted the stock law, prohibiting stock from running at large, and the rule is well settled in this state that that statute was enacted, not only for the protection of animals, but especially for the purpose of protecting human life from derailments caused by striking such animals. T. & N. O. Ry. Co. v. Langham, 95 S. W. 686, and authorities there cited. Such being the law, the acquisition of a right of way in such localities under condemnation proceedings clearly would embrace the right to fence the track, and under those circumstances the owner of the fee could not be heard to say that the fencing of the right of way was an additional servitude placed upon the property, or that the same was unnecessary to the safe operation of trains over the right of way. Condemnation proceedings in a town or city are not different from those in the country, and, even though the statute referred to might not require the fencing of the right of way inside of a town or city, nevertheless it would be the common-law duty of the railway company to do so if, as a matter of fact, such a fence was reasonably required for the protection of lives of persons who might go upon the track at places where they had no legal right to be, and the condemnation of the land in controversy carried with it the right to fence the track if such fencing was necessary to the discharge of that common-law duty.

[6, 7] Furthermore, it is a familiar rule that, if the railway company habitually permits the public to use its track as passways at places other than public crossings, such persons become licensees, to whom the railway company owes a higher degree of care to avoid injuring them in the operation of its trains than it owes to a mere trespasser, and hence the legal burden upon the railway company in the operation of its trains is increased accordingly. Further still, it was held in Lyon v. McDonald, 78 Tex. 71, 14 S. W. 261, 9 L. R. A. 295, that the owner of the fee had no right of passage over ground that had been condemned by the railway company, since such owner was not prevented from crossing the same at any public crossing. If the owner of the fee has no such right of passage, then a fortiori he has no right to claim such right of passage in the public as an incident to their patronage of his business conducted on property adjoining the condemned land.

[8] Furthermore, if the finding that the fence was not necessary to the safe operation of the industrial track be construed as meaning that the defendants in the operation of that track were not required to exercise any higher degree of care for the safety of the public and of their employés in the absence of the fence than would be required with said fence, then such finding is contradicted, to some extent at least, by the facts stated in the twenty-third paragraph of the findings, which show that passengers from trains are in the habit of occasionally crossing the strip in controversy from the Union Station for the purpose of entering the back door of plaintiffs' saloon, and that such persons sometimes congregated about the doors opening into the saloon and restaurant, and sat upon beer kegs around the door, in connection with the further facts stated in the thirty-first paragraph of the findings showing a large patronage to plaintiffs' business through the back door of the saloon and the side door to the restaurant. The judgment rendered was in favor of the defendants, and every reasonable presumption must be indulged to support it, and, if the issue whether or not, in the absence of the fence, defendants, in the operation of trains on the industrial track, would be required to exercise a higher degree of care for the protection of the public and their employés, be one of the pivotal issues in the case, as insisted by appellants, then it must be presumed that the court found that issue in favor of the defendants, and we are of the opinion that the facts last recited are sufficient to support that conclusion.

[9, 10] Nor do we think that the probative force of those facts is necessarily destroyed by the further facts found by the court that defendants failed to fence other tracks running nearer saloons and restaurants than the industrial track in the present suit, especially in the absence of any finding whether or not persons are in the habit of crossing such tracks and congregating near the same at those places, and the further fact that defendants maintained a passageway for public travel between the industrial track and the fence. The said passageway runs parallel with the house track until it reaches the point where it crosses that track. Persons loitering upon the condemned property and walking across it at places other than the crossing named necessarily would impose upon the defendants an added burden to keep a lookout for them.

[11] We are of the opinion that there is no merit in the further contention by the appellants that the railway companies are estopped to claim the right to maintain the fence by reason of the facts found by the court and shown above, principally that defendants stood by and allowed the plaintiffs to spend some $25 or $30 in money for the purpose of using the passageway lying next to the building, which defendants had held out as a public thoroughfare for the last three years, since, as said in F. W. & D. C. Ry. Co. v. Ayers, 149 S. W. 1068, permissive use of a road or way across uninclosed land does not ripen into a right, however long existing. See, also, Ramthun v. Halfman, 58 Tex. 551; N. P. Ry. Co. v. Smith, 171 U. S. 260, 18 Sup. Ct. 794, 43 L. Ed. 157; Letts v. Kessler, 54 Ohio St. 73, 42 N. E. 765, 40 L. R. A. 177.

[12, 13] The judgment of the trial court in

favor of the defendants necessarily implies a finding adverse to plaintiffs on their plea of estoppel. If defendants had the right to fence the track, and if the permissive use of the passageway did not ripen into a right on the part of the public to use it as such, we fail to see how the principle of estoppel would apply by a mere knowledge on the part of the defendants of plaintiffs' intended use of the property and of the expenses incurred by them in making openings in the building leading to that passageway, coupled with their failure to object to such improvements until after the same were made. No facts are found indicating a willful desire on the part of the defendants to mislead the plaintiffs into incurring such expenses within the meaning of the rule announced in Timon v. Whitehead, 58 Tex. 295, cited by appellants.

[14, 15] The use by the public of the passageway for a period of three years would not be for a sufficient length of time to constitute a dedication of such highway by prescription. Heilbron v. St. L. S. W. Ry. Co., 52 Tex. Civ. App. 575, 113 S. W. 610, 979. If the facts found by the trial court that the defendants had maintained the passageway for the use of the public for three years could be construed as a finding that the defendants irrevocably dedicated the same as a public highway, which construction we believe would be unwarranted, nevertheless such a dedication could not confer upon the plaintiffs any special rights to the use of the highway different from that enjoyed by the public at large, and the right to use it for the purposes claimed in this suit clearly would not be a right common to the public. Hughes v. Dubbs, 84 Tex. 502, 19 S. W. 684.

For the reasons noted all assignments of error are overruled, and the judgment is affirmed.

BUCK, J. (dissenting). In the face of the findings of fact by the trial court filed herein and set out in the majority opinion the writer feels some doubt as to the correctness of the conclusions reached by his Brethren. The case as now presented is in many respects different from that shown on the former appeal. In the first place, by the amended pleadings filed subsequent to our decision in the former appeal plaintiffs present a somewhat different cause of action, among other things supplying the allegation "that it was not necessary for the operation of the defendant railroad that it have said fence erected and maintained on said property as above described." The absence of this averment was commented on in the opinion on the former appeal reported in 176 S. W. 827. In the second place, the court has found facts which have not been attacked by the appellee, which substantiate the claim of the appellants that the erection and maintenance of this fence is not necessary for the safe operation of defendant's track or tracks, and for the uses for which the property had been condemned, and, that the use of the premises by the plaintiffs as a means of egress and ingress to the rear of the saloon and to the restaurant is not inconsistent with the use of the premises for the purposes for which the condemnation proceedings were had, and does not increase the hazard on the part of the defendant in the use thereof for said purposes. In the absence of a positive showing, or at least a reasonable presumption from the facts recited, that such use by the plaintiffs was inconsistent with the use of the premises by defendant for the purposes for which the property had been condemned, it seems to the writer that an appellate court is not justified in presuming in favor of the judgment the necessary facts to sustain it. This is especially true when the court's findings are contrary to such presumptions. In Kimball v. Houston Oil Co., 100 Tex. 336, 99 S. W. 852, our Supreme Court, speaking through Justice Williams, says:

"It is the contention of plaintiffs that the district judge and the Court of Civil Appeals erred in holding that it was incumbent upon them to prove that Isam Parmer, the junior purchaser of the land in controversy, paid for it a valuable consideration and took without notice of the prior unrecorded deed to David Brown. Besides controverting this proposition, the defendants in error urge that this question does not arise in the present state of the record, because, they say, there being no statement of facts, the court should presume in favor of the judgment that every fact essential to its correctness was proved. This is the rule where there is neither statement of facts nor findings of the trial judge; but it is not applicable here, because the law authorizes an appeal upon such findings alone, and generally entitles the appellant, who has properly excepted to them, to have the correctness of the legal conclusions on which the judgment rests tested by the facts stated as their basis. Continental Ins. Co. v. Milliken, 64 Tex. 46; Chance v. Branch, 58 Tex. 490; Cousins v. Grey, 60 Tex. 346.

"It may sometimes happen that findings omit any mention of a fact proof of which would be essential to the correctness of the judgment, and that, in the absence of anything said about it, such fact should be presumed; and we are not to be understood as holding that such findings are to be treated as special verdicts were formerly treated, and required to state affirmatively every fact necessary to support the judgment. Thomas v. Quarles, 64 Tex. 493. However that may be, it is apparent that in this case the trial judge stated affirmatively the facts and the state of the evidence from which he drew his conclusions of law, and held that the junior must be regarded as inferior to the senior deed, in the absence of proof that the last purchaser paid value and bought without notice. It cannot be presumed, in view of the express statements made, that there was proof of other record or notice or want of consideration than such as is mentioned."

In Reed v. Brewer, 90 Tex. 144, 37 S. W. 418, it is said, quoting from the syllabus:

"Where trial is without a jury, and no findings of fact are made, it will be presumed on appeal that the court found every fact necessary to its judgment fairly deducible from the evidence. A party desiring to avoid being bound by this presumption should demand of the trial court the filing of conclusions of fact."

The court finds in paragraphs XXIV, XXV, XXVI, and XXVII that the distance from the house track, the only track on the lot condemned, to the door of the restaurant, is 17 feet 4 inches, and the distance from said house track to the door in the rear portion of the saloon is 21 feet, that the industrial track is not used on an average of more than four times a week, and that for the purpose of operating this industrial track it is not necessary for the safe operation of same for the defendant company to have and maintain the fence so erected. It further appears from said findings (XXIII) that:

Only "a few times there were seen as many as three or four people standing together by the sides of the doors opening on to this passageway during the period of September 5, 1914, to January 7, 1915, and sitting upon beer kegs around said door; occasionally passengers from the trains stopping at the Union Station walked across the tracks of defendants and entered into the back door of said saloon."

It further appears from the findings of the court (VII) that the defendant has erected a public passway between Seventh and Eighth streets, and has erected and maintained a crossing over this house track near the end of the premises now occupied by plaintiffs, and that said public crossing had been used generally by the public for three years prior to the time plaintiffs entered into possession of said premises.

As the writer understands the record, the defendant company has constructed and maintains a public passway running the full length of plaintiffs' premises and lying just east of the fence erected. Since the railway company has voluntarily devoted to the use of the public this passway running the length of plaintiffs' property and crossing defendant's house track, the writer cannot see how it could be reasonably claimed that there would be any increase in the hazard to life or to property by reason of certain ones of the public turning off at this passway into either or both of the open doors leading into plaintiffs' building. From the findings of the court it appears that it is only rarely that any one attempts to cross from the depot over to plaintiffs' place of business, and therefore the writer necessarily concludes that plaintiffs' patrons generally use the very passway which has been constructed for and thrown open to the public. Since the house track is more than 17 feet from the door of the restaurant, the fact that a few times three or four people stood in or about the doorway, or sat upon kegs around said doorway, could hardly support the conclusion that thereby and therefrom the use of this house track by the defendant was impressed with any additional danger or hazard.

While there might be some question as to whether under certain circumstances a lessee of the hotel building would succeed to the rights reserved to the owner of the premises condemned, yet no question seems to be made with reference thereto, and it was stated on oral argument that no question existed. Therefore it is assumed that the plaintiffs herein possessed all of the rights to the use of the premises condemned which were not inconsistent with the uses of the railway in contemplation of the condemnation proceedings. The erection of this fence by the railway company is either an additional use to those enumerated in the condemnation judgment, or a means of securing the safe and unimpeded use for the purposes designated in said judgment. The court has found as a matter of fact that the erection of the fence is an additional use, and, if so, it would require a further condemnation. In the case of Lyon v. McDonald, 78 Tex. 71, 14 S. W. 261, 9 L. R. A. 295, our Supreme Court held that, where a railroad company permits a party to use part of the premises condemned for depot grounds for storing lumber shipped to him over the railroad until sold, and allows him to erect thereon an office, etc., the owner of the fee can recover from such party the rental value of the premises so used for a lumber yard; as the railroad company neither has the right to use the premises for such purposes, nor to permit others so to use them. It is further held in this case that, though the owner of the fee in the premises condemned for depot grounds owns an adjacent lot, he has no right of passageway over the railroad grounds except the public crossings. This opinion further holds that:

"Where land is condemned for a special purpose on the score of public utility, the sequestration of the land is limited to that particular use; and, if the property be put to a wholly different use, though for public purposes, a new assessment will be required."

Since the court has found that the railroad company has devoted that portion of the lot condemned lying adjacent to and the length of the hotel building leased by plaintiffs to the purposes of a public crossing or passway, the writer is of the opinion that the plaintiffs would have the same right, and also their customers, to use this passway as other members of the public, and that it would make no material difference that in so using such passway they should do so for the purpose of entering or coming from the restaurant or the rear of the saloon.

Without further extending this dissent, it is sufficient to say that, in view of the findings of fact by the court above referred to, and in view of the authorities cited, the writer is of the opinion that the judgment of the trial court was not authorized, and should be reversed.