## AYCOCK et al. v. HOUSTON LIGHTING & POWER CO.

### No. 11532.

Court of Civil Appeals of Texas. Galveston.
June 17, 1943.

Rehearing Denied Dec. 2, 1943.

Walter F. Brown, of Houston, for appellants.

Cleveland Davis, of Angleton, and Tom M. Davis and W. E. Junell, both of Houston (Baker, Botts, Andrews & Wharton, of Houston, of counsel), for appellee.

CODY, Justice.

This is a condemnation proceeding to condemn an easement 80 feet wide for the construction of lines for the transmission and distribution of electric current, and to condemn in addition an easement 50 feet wide on each side of the 80-foot strip. The proceeding was instituted on April 25, 1941, by appellee filing its petition in the County Court of Brazoria, alleging that it could not agree and had failed to agree with the appellants (who were the owners of an undivided third interest in 1550-acre tract across which said easements were sought to be condemned), and prayed for the appointment of Special Commissioners to award the damages. (It should be stated in this connection that appellee had there-tofore acquired by agreement the easements from the owners of the undivided two-thirds interest.) Thereafter, the Special Commissioners, who were duly appointed and qualified, awarded the owners, as damages, the sum of $200, being the sum of $50 each to Mrs. Lula Aycock, Mrs. Estelle Rudersdorf, Mrs. Lee Seaburn Hudgins, and Miss Erna Seaburn. Then, on May 13, 1941, appellee filed its bond in the sum of $400, being double the amount of the award. And the owners, who are appellants, being dissatisfied with the award, filed their objections thereto.

Thereafter, the case proceeded to judgment wherein the Power Company recovered, first: "an unobstructed easement over, across and upon the strip of property hereinafter described for the purposes of erecting, maintaining and servicing thereon various numbers of wires, and all the necessary or desirable apparatus or appurtenant thereto (including, but not by way of limitation, poles of wood, or other material, metal towers, guy wires, guy anchors, underground wires and conduits) for the transmission of electric current * * *"; such easement being a strip 80 feet in width; and, second, the Power Company recovered an additional easement 50 feet wide "on each side, and running parallel with the boundaries, of the aforesaid eighty (80) foot unobstructed easement within which additional easement plaintiff (Power Company) shall have the right (but this right only) to cut and/or trim all limbs of trees and trees which, in the judgment of plaintiff, may constitute a hazard to the safe operation of the aforesaid property, or properties, to be placed by plaintiff on the eighty (80) foot unobstructed easement * * *". And three of the aforesaid owners, and the heir of the fourth owner, who died pending the action, each were awarded the sum of $16.67.

The owners of the undivided third interest of the land upon which the easements were thus imposed have duly appealed and here present 46 points, covering some 13 pages of their brief, seeking reversal of the judgment of the trial court. Such a plethoric specification of errors is not contemplated by the new court rules. Obviously we cannot specifically pass upon each point. Indeed, it would unduly extend the opinion to set them out. We have assumed the burden of drafting our opinion so as to rule upon each point by necessary implication where we have been unable to rule expressly thereon.

The case was submitted to the jury upon four special issues with reference to which appellants urge objections, and also urge objections to the failure of the court to give special issues which they offered and urge should have been given. In connection with the four special issues submitted by the court, the jury were charged that they should answer them as though appellants owned the entire interest in the land inquired about, and were instructed that the court would determine the interest of each defendant in such land and award each defendant the proper proportion of the damages awarded. The court further instructed the jury that by the term "easement", as used in the special issues, is meant the right to use the land for some specified purpose or purposes, and none other, so that the title to the property covered by the easement, as well as the right to use, occupy, and enjoy the property remains in the original landowner, provided, however, such use, occupancy and enjoyment of the property by said original owner does not interfere with the use of the property for the specified purpose, or purposes, for which the easement is acquired. The court further instructed the jury that appellee, on May 13, 1941, acquired two easements, the first being the 80-foot easement containing 17.97 .acres of land, for the construction, maintenance and servicing thereon of "various numbers of wires and all the necessary or desirable apparatus appurtenant thereto (including, but not by way of limitation, poles of wood or other material, metal towers, guy wires, guy anchors, and underground wires and conduits) for the transmission and distribution of electric current and energy; the second easement being an area 50 feet wide on each side, and running parallel with the boundaries of the aforesaid 80-foot easement, containing therein an additional 22.46 acres of land, within which—additional easement Houston Lighting and Power Company shall have the right (but only the right), from May 13, 1941, to cut, and/or trim all limbs of trees and trees which, in the judgment of Houston Lighting & Power Company, may constitute a hazard to the safe operation * * *" etc.

Special Issue No. 1 inquired as to the market value of the strip of land, considered as severed land, covered by the easements acquired by appellee immediately prior to their acquisition on May 13, 1941. And the jury was instructed that by the term "market value", as used in the special issues submitted to them, is meant "the price the property will bring when it is offered for sale by one who desires to sell, but is not obliged to sell, and is bought by one who desires to buy, but is under no necessity of buying." Special Issue No. 2 inquired as to the market value on May 13, 1941, of said strip of land (inquired about in Special Issue No. 1), considered as severed land, taking into consideration the uses which appellants "may make of the strip of land", immediately after appellee acquired the easements·on May 13, 1941. In connection with Special Issue No. 2, the jury was instructed that the phrase "uses, if any, which defendants (i.e. appellants) may make of the land inquired about in Special Issue No. 1" is meant "any use of said land by the defendants which is not inconsistent with and does not interfere with the use of said land for the uses and purposes for which Houston Lighting & Power Company has acquired said two easements, as described in the instructions in this charge." The court further instructed the jury, in connection with Special Issue No. 2, that the Power Company has no right to fence the whole or any part of the land covered by the two easements, but that the landowners may fence along the boundaries of the said strip of land, or any part of it, but are not bound to do so. Special Issue No. 3 inquired as to the market value of the balance of said strip of land belonging to appellants, exclusive of the strip of land now occupied by the two easements, immediately before the Power Company acquired said easements. Special Issue No. 4 reads as follows: "Excluding increase in value, if any, and decrease in value, if any, by reason of benefit or injuries received by the defendants in common with the community generally and not peculiar to them and connected with their ownership, use and enjoyment of the particular tract of land across which said two easements have been acquired by the plaintiff, Houston Lighting & Power Company, and taking into consideration the uses to which the said strips of land so acquired by the plaintiff, Houston Lighting & Power Company, is subjected, or may be subjected under said two easements, what do you find from a preponderance of the evidence was the market value of the remainder of defendants' said tract of land immediately after the acquisition by the plaintiff, Houston Lighting & Power Company, of the easements on said strip of land?"

714

The jury answered the special issues as follows: No. 1, $600; No. 2, $400; No. 3, $22,650; No. 4, $22,650. Upon such verdict, as stated above, judgment was rendered that each of the landowners recover the sum of $16.67.

The easements condemned by appellee in this suit form a part of appellee's right of way from Houston to Dow's Chemical Company at Freeport, a distance of 53 miles. As indicated above, the easements were condemned for both the transmission (high voltage) and distribution (low voltage) of electric current. However, the line is now equipped only for transmission of current, and carries a current of 132,600 volts. It need hardly be added that if this current comes into contact with man or beast, and there is a ground connection, the result would be fatal.

As appears above, the court instructed the jury that appellee has no right to fence the easements which it condemned. Had the court not so instructed the jury, they might have erroneously concluded that appellee had the right to fence the 80 foot easement and thus exclude appellants from access to said 80 foot strip of land, and thereby also injure the remainder of appellants' land by thus dividing it in two. We agree with appellants that this point was not decided by us in Arcola Sugar Mills Co. v. Houston Lighting & Power Co., Tex.Civ.App., 153 S.W.2d 628, writ refused, want of merit, because of the agreement under which that case was tried. However, we do not regard such instructions as error. The rule is stated in 19 Corpus Juris 987, thus: "The owner of the easement has no right to build fences along the sides of a way, or to erect gates across it." See also 28 C.J.S., Easements, § 98. There is no statute imposing the duty on, or giving the right to power companies to fence their rights of way. And the evidence in this case was that it is their uniform practice not to fence except where they own the fee, and then they do so only in order to protect themselves against squatters. There is danger in a transmission line only from contact, as above indicated, but fencing the right of way would afford little if any protection against danger of contact with the current, and a wire fence would obviously multiply the danger if the current came into contact therewith. The height of the conductor from the ground at its lowest point of sag, at 120 degrees, is 30 feet. The means adopted to decrease danger in this instance (aside from safety devices designed to cut off the current in case of break, etc.) was the acquisition of the two 50-foot strips, with the right to cut and trim trees. Under the proof in this case, it is clear that power companies have no common-law duty or right to fence their rights of way, it not being a means to protect against danger to life or property. It is undoubtedly the law that railroad companies have the right and duty under certain circumstances to fence their rights of way. Craig v. Ft. Worth & D. C. Ry. Co., Tex.Civ.App., 185 S.W. 944. Such right as to railroad is statutory under some circumstances and under some circumstances a common-law right. Id. But the cited case expressly recognizes the rule announced in Muhle v. New York, T. & M. Ry. Co., 86 Tex. 459, 25 S.W. 607, that a condemnation decree passes only the right to the specific use therein awarded, and that the right remains in the owner of the fee to use the property in any manner not inconsistent with the uses for which it was condemned. As appellee had no statutory or common-law right to fence the 80-foot strip, unless it acquired the right to fence in the condemnation proceedings, it has no such right. In this connection see Alabama Power Company v. Sides, 212 Ala. 687, 103 So. 859.

Appellee did not acquire the right to fence under the terms of the judgment which condemned and imposed the easement in this case. As pointed out above, appellee imposed an easement upon the 80 foot strip for the purposes erecting, maintaining and servicing thereon various numbers of wires and "all the necessary and desirable apparatus * * *". This language will not reasonably bear the construction that the arbitrary will or desire of appellee is made the measure of just what "apparatus" (inclusive of fencing) appellee may erect and maintain upon the 80-foot strip. In effecting the condemnation appellee was exercising its right of eminent domain. Arcola Sugar Mills Co. v. Houston Lighting & Power Co., supra. It could only take private property for a public use. Companies possessing the right to condemn private property for a public use cannot do "what they please with the land condemned, but that they may do what is reasonably needful to carry out the purposes for which the land is taken. Anything beyond this is not the taking of private property for public use, but the taking of private property for private use.

It follows, therefore, when the whole of the tract is not taken, that the kind and character of easement condemned, and the manner in which the rights of the condemnor are to be exercised and maintained, and the rights and privileges left in the owner, may properly be taken into consideration in assessing the damages. St. Louis, K. & N. W. Ry. Co. v. Clark, 121 Mo. 169, 25 S.W. 192, 26 L.R.A. 751." Gulf Coast Irrigation Co. v. Gary, 118 Tex. 469, 14 S.W.2d 266, 271, 17 S.W.2d 774, answering certified questions. Again, in the same case, it was stated that the condemnor merely takes an easement that carries with it no greater dominion thereover than "is proper and needful to carry out the purposes for which the land is taken." The expression in the judgment, "all necessary and desirable apparatus", is, in a suit of this character, the legal equivalent of "all needful and proper apparatus." Since it is not needful and proper to fence the easements, the judgment of condemnation did not confer upon appellee the right to fence the 80-foot strip. It was proper for the court to inform the jury that appellee could not fence the easements, because if appellee had the right to fence them, and thereby exclude the appellants from access to them, there would have been a "taking" of the easements, and Section 2, R.S. Art. 3265, would have fixed the measure of damages recoverable with reference to the strip fenced. The acquisition of the right to take possession of specified land and exclude the owner from possession is a complete "taking". Perkins v. State, Tex.Civ.App., 150 S.W.2d 157, 159.

■ What has just been said disposes of appellants' contention that there was a complete taking of the 80-foot strip, and that appellee can at its arbitrary will install equipment thereon which will exclude appellants therefrom. It was not necessary for appellee to specify just how many poles it would install and where each one would be placed, and so specify with reference to each item of equipment; and we so held in Arcola Sugar Mills Co. v. Houston Lighting & Power Co., supra.

■ Special Issue No. 4 is set out above in haec verba. It deals with the value of the land not covered by easements immediately after the acquisition of said easements. The language of Special Issue No. 4 tracks the form of special issue suggested in State v. Carpenter et al., 126 Tex. 604, 89 S.W.2d 194, 201, 202, 979. It

is here applicable, and the court correctly gave it. Appellants' witnesses testified to the value of the land on the basis of its suitability for subdivision purposes, and testified that the availability of electricity to a subdivision is beneficial and increases its value. The fact that the poles are not wired for distribution of electricity did not prevent the evidence from being admissible. It was shown that the land was located some five miles from Freeport, and that at a relatively small expense, a distribution line could be strung upon the poles from Freeport to this area, or that a transformer could be installed where the land here involved is located. We passed upon the same point, ruling such evidence admissible, in Arcola Sugar Mills Co. v. Houston Lighting & Power Co., supra. The jury should consider special benefits to property by reason of the availability of electricity to property valuable as subdivision property under the evidence in this case. Id. Neither was the issue erroneous because it directed the jury to determine immediately after acquisition of the easements. For they were directed to consider every use to which the easements have been or may be subjected. Furthermore, appellee filed its bond and made the deposit on May 13, 1941, which date the trial court adopted in the charge to the jury for fixing values and damages. That damages are to be determined as of such date is settled. City of Houston v. Susholtz, Tex.Civ.App., 22 S.W.2d 537, affirmed, Tex.Com.App., 27 S.W.2d 728.

■ It might have been the better practice to submit separate issues under the 80-foot strip and the 50-foot strips. But Special Issues Nos. 1 and 2 (which were apparently taken from State v. Carpenter, supra) sufficiently presented the question of market value of the easements immediately before and immediately after the acquisition thereof. The definition of market value given in the charge was expressly approved in State v. Carpenter.

■ The trial court did not err in excluding evidence of the cost per kilowatt of electricity to appellee's rural customers. It was admissible for no purpose. As a public utility appellee could only charge reasonable and nondiscriminatory rates where they are not fixed by statute.

■ The court did not err in permitting witnesses to testify that the property not covered by the easements was benefitted by

electricity having been made available. Arcola Sugar Mills Co. v. Houston Lighting & Power Co., supra. See also Gulf Coast Irrigation Co. v. Gary, supra.

There was no impropriety in the court instructing the jury to answer each special issue on the basis that appellants owned the entire interest in the land and that the court would determine the proper proportion of damages to which each of appellants was entitled. It was not disputed that appellants owned an individed third interest of the land, nor was it disputed as to the interest each appellant owned. Appellants could not be entitled to any different share in the damages awarded than their proportionate part. In any case, if appellants were entitled to a greater share than their proportionate parts, they had the burden of making such proof. No such proof was offered, nor can we see how it could be. The manifest purpose of the submission was to avoid confusing the jury, and no injury resulted to appellants.

It is not disputed that appellee made no attempt to agree with any appellants upon the value of the two 50-foot strip easements before the condemnation suit was filed. But it is equally undisputed that such attempt was made to agree upon the 80-foot strip easement, and it is apparent that appellee could have no purpose of acquiring the 50-foot strip easements unless it acquired the 80-foot strip easement, and it unmistakably appears from the evidence and from appellants' pleadings (wherein they sought to recover damages in the sum of one-third of $191,126) that an attempt on the part of appellee to reach an agreement would have been a futile thing. This being true, appellants may not urge the point. Texas & N. O. R. Co. v. City of Beaumont, Tex.Civ.App., 285 S. W. 944, writ denied, and authorities there cited. While it is true that appellee did not expressly allege that an attempt to agree with appellants would have been futile, it alleged that it could not agree. This allegation was broad enough to authorize the proof that an attempt to agree would have been futile. Id. See also Houston N. S. Ry. Co. v. Tyrrell, 128 Tex. 248, 98 S.W.2d 786, 795, 108 A.L.R. 1508. We do not regard this holding as being in conflict with the holding in Brinton et al. v. Houston Lighting & Power Co., Tex. Civ.App., 175 S.W.2d 707, this day handed down.

It was not error for the court to adjudge that appellee acquired the right, as a part of the servitude imposed upon the 80-foot strip, to erect, maintain and service underground wires. Texas Louisiana Power Co. v. Webster, 127 Tex. 126, 91 S.W.2d 302, 305. Appellee acquired in the easements which it condemned only the rights specified in the judgment. There was no complete taking of the 80 foot strip.

No good purpose would be served to discuss other points urged by appellants; they relate to rulings on evidence, and we consider they are without merit.

The judgment of the trial court should be affirmed and it is so ordered.

Affirmed.